Dominic S. Rinaldi, J.
Defendant appeals from a judgment after trial awarding plaintiff the sum of $1,500, found to be due for an alleged breach of a contract whereby defendant granted plaintiff a “ call ” on 100 shares of stock of the SCM Corporation (SCM) owned by defendant at the time the contract is alleged to have been made. Defendant denied the claim and also pleaded the Statute of Frauds.
Plaintiff is a “ put and call ” broker. It is undisputed, and the testimony indicates, that a “call” (“puts” are not involved herein) is an option or contract giving the holder the right to demand a stated number of shares of stock at a specified price on or before a certain fixed date. The call price is usually the market price at the time the option is granted, and the price paid for the option is called the “ premium.” Calls are usually sold for exercise within 60 or 90 days, or 6 months and 10 days. These option contracts are sold by members of the “ Put and Call Brokers and Dealers Association, Inc.” and are guaranteed by member firms of the New York Stock Exchange. *492 Usually, the negotiations are carried on between the purchaser’s (or seller’s) broker and the put and call dealer, but in the instant case the defendant is alleged to have been in direct contact with the plaintiff dealer. All negotiations are conducted orally and by telephone to the point at which there is an agreement upon the terms of sale. When a trader has a firm bid, he makes out a confirmation to show what was sold or bought and sends copies to the brokerage firms for their indorsement (guarantee). If an individual, rather than a broker, carried on the negotiations, the confirmation would be sent to the individual’s broker.
In the instant case, it is uncontroverted that Dean Witter & Co., defendant’s broker, returned the confirmation to plaintiff one week subsequent to the alleged trade and two days after it had been sent, marked “ DK.” The “ DK” signifies “ Don’t know,” i.e., they have no instructions from their customer to accept the trade for indorsement. Of course, if this confirmation had been returned indorsed by Dean Witter & Co., there would have been compliance with section 8-319 of the Uniform Commercial Code (set forth infra).
There is ample support in the record for the finding of the court below that defendant had agreed to sell plaintiff a call on 100 shares of SCM Corporation at 30% for $337.50 plus a $20.50 brokerage fee to be paid to his account, with an expiration date of March 28, 1966 and that plaintiff sustained the damages allowed. The court was justified in attaching great weight to the testimony of defendant’s registered representative or customer’s man at Dean Witter & Co. to the effect that the sale had been made. Thus, the basic question is the applicability of the Statute of Frauds.
On this appeal, defendant contends that the alleged agreement comes within the Statute of Frauds, is not enforcible, and therefore the judgment should be reversed. In our opinion, although the Statute of Frauds may apply to a call option in excess of $5,000, the statute which defendant seeks to apply has no application to the transaction herein involved.
Defendant seeks to apply section 8-319 of the Uniform Commercial Code which states as follows:
“ Statute of Frauds. A contract for the sale of securities is not enforceable by way of action or defense unless
“ (a) there is some writing signed by the party against whom enforcement is sought or by his authorized agent or broker sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price; or
*493 “ (b) delivery of the security has been accepted or payment has been made but the contract is enforceable under this provision only to the extent of such delivery or payment; or
“(c) within a reasonable time a writing in confirmation of the sale or purchase and sufficient against the sender under paragraph (a) has been received by the party against whom enforcement is sought and he has failed to send written objection to its contents within ten days after its receipt; or
“(d) the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract was made for sale of a stated quantity of described securities at a defined or stated price.”
The proof here is clear that neither the defendant nor his broker signed anything to indicate a contract of sale had been made (subd. [a]) or failed to return the confirmation of sale within 10 days as required by subdivision (c). The testimony is that Dean Witter & Co., defendant’s agent or broker, returned the confirmation and option unindorsed within two days after receipt with an affirmative rejection of the sale. Thus, if the “ call ” is a security, the sale of it would come within the statute and the complaint must be dismissed. Defendant’s brief states that “ Such a ‘ call ’ clearly is a ‘ security ’ under the provisions of the Uniform Commercial Code, and further is deemed ‘ securities ’ within the meaning of the Securities Exchange Act of 1934.” However, no authority is cited for construing the Uniform Commercial Code as being applicable to a call option. While we have found authority (Burnside & Co. v. Havener Securities Corp., 25 A D 2d 373) to the effect that the section applies to the sale of warrants to purchase stock and that such sale is “ A contract for the sale of securities,” it should be noted that a warrant is an option to purchase which is issued by the company whose stock is involved and is the obligation of that company to issue shares of its stock at a certain price. On the other hand, the seller of a call option is not the company upon whose stock the option is issued, and the seller need not even own the stock involved. (The proof here, however, is that defendant was the owner of 100 shares of SOM Corporation.)
In Matter of Waldstein (160 Misc. 763, 766-767), the court defined a security as follows:
‘ ‘ The term ' security ’ has no exactly defined legal definition. G-enerically, the word has reference to written instruments, usually for the payment of money or evidences of a debt, and being more than a mere promise of the debtor of a general liability on his part, but having as collateral to it a pledge of property or some additional obligation. * * *
*494 “ By common usage, however, the term has acquired a much broader signification. It is now generally used to refer to instruments for the payment of money, or evidencing title or equity, with or without some collateral obligation, and which are commonly dealt in for the purpose of financing and investment.
“ By modern business methods, those instruments which are used to facilitate dealing in commodities, such as short-term notes, bills of lading, bills of exchange and all the other inventions of the commercial banker, are not referred to as securities, although they may be collaterally secured in some way. Those instruments, however, secured or unsecured, which are used for the purpose of financing enterprises and promoting a distribution of rights in or obligations of such enterprises, and which are designed as a means of investment, are termed securities.
‘ ‘ Thus, certificates of stock are now regarded as securities, although they but represent a share of the capital stock of a corporation, the interest of the owner in the management of the corporation, and his interest in its surplus assets upon its dissolution.
1 ‘ In general, it may be said that any form of instrument used for the purpose of financing and promoting enterprises, and which is designed for investment, is a security according to the modern meaning of that term.”
Obviously, the “ call ” has none of these attributes. It is not an instrument for the payment of money, it does not represent title or equity, does not finance an enterprise, nor is it designed for investment. In the latter connection, it should be noted that article 8 of the Uniform Commercial Code is entitled “ Investment Securities.”
Section 8-102 of the Uniform Commercial Code defines a security as follows:
‘ ‘ Definitions and Index of Definitions.
“ (1) In this Article unless the context otherwise requires “ (a) A ‘ security ’ is an instrument which “ (i) is issued in bearer or registered form; and “ (ii) is of a type commonly dealt in upon securities exchanges or markets or commonly recognized in any area in which it is issued or dealt in as a medium for investment; and
“ (iii) is either one of a class or series or by its terms is divisible into a class or series of instruments; and
“ (iv) evidences a share, participation or other interest in property or in an enterprise or evidences an obligation of the issuer.”
Here, it should be noted that the four paragraphs are stated in conjunctive form and accordingly, to constitute a security the *495 instrument must conform to all the requirements. As we view it, the call option fails to so conform. While it is a contract or chose in action concerning a security, it is not the security itself.
Inasmuch as section 8-319 of the Uniform Commercial Code is not applicable, the contract would be governed by section 1-206 of the Uniform Commercial Code which provides:
“ Statute of Frauds for Kinds of Personal Property Not Otherwise Covered.
“ (1) Except in the cases described in subsection (2) of this section a contract for the sale of personal property is not enforceable by way of action or defense beyond five thousand dollars in amount or value of remedy unless there is some writing which indicates that a contract for sale has been made between the parties at a defined or stated price, reasonably identifies the subject matter, and is signed by the party against whom enforcement is sought or by his authorized agent.
“ (2) Subsection (1) of this section does not apply to contracts for the sale of goods (Section 2-201) nor of securities (Section 8-319) nor to security agreements (Section 9-203).”
As noted in New York Jurisprudence (Statute of Frauds,
§4):
“ The purpose of the foregoing provision [Uniform Commercial Code, § 1-206] was to fill a gap left by other statute of frauds provisions in the UCC, namely, the sale of ‘ general intangibles ’ * * *
“ Excepted from the application of the statute are contracts for the sale of goods or securities, and security agreements.”
The court below and the attorneys apparently did not consider the foregoing section and the court held that the Statute of Frauds (Uniform Commercial Code, § 2-201 [sale of goods]) did not apply because the amount of the contract was under $500. In any event, the result would have been the same because the amount here involved is less than $5,000 whether we consider the purchase price of the contract or the value of the SCM stock.
The judgment should be affirmed.
Concur — McDonald, P. J., and G-roat, J.
Judgment affirmed, with $25 costs.