In re ASSOCIATED TRANSPORT, INC., Bankrupt.

Thomas J. CAHILL, as Trustee-in-Bankruptcy of Associated Transport, Inc., Plaintiff,

v.

FRUEHAUF CORPORATION, Defendant.

Bankruptcy No. 76–B–982–RB.

United States Bankruptcy Court, S. D. New York.

Feb. 28, 1980.

---

Anderson, Russell, Kill & Olick, P. C., New York City, for trustee; Steven M. Pesner and Robert P. Reichman, New York City, of counsel.

Conboy, Hewitt, O'Brien & Boardman, New York City, for Fruehauf Corp.; Marvin F. Hartung and Thomas V. McMahon, New York City, of counsel.

## OPINION

ROY BABITT, Bankruptcy Judge:

Associated Transport, Inc. (Associated), the bankrupt, a Delaware corporation, with New Jersey as the principal place of its pre-adjudication business as a motor common carrier of freight in interstate and intrastate commerce, came to this court as a petitioner for relief under Chapter XI of the now repealed 1898 Bankruptcy Act, Sections 301 *et seq.*, 11 U.S.C. (1976 ed.) §§ 701 *et seq.*[1] Recourse to the optimism for survival generated by those debtor relief provisions was short-lived and Associated was adjudged bankrupt, its property under 70a, 11 U.S.C. (1976 ed.) § 110(a), to be liquidated within the liquidation scheme of the 1898 Act.

Acting on the authority given by Rule 610, 411 U.S. 1067, 93 S.Ct. 3146, 37 L.Ed.2d 65, to "commence . . . any action . . . in behalf of the estate," Associat-

---

1. Notwithstanding the enactment on November 6, 1978 and operative effect of the 1978 bankruptcy legislation on October 1, 1979, Section 402(a) of Title IV, and the repeal of the 1898 Act, Section 401(a), a case begun under the latter, as here, is conducted and determined under the 1898 Act as though the 1978 law had not been enacted. Section 403(a). See footnote 6 in *Guardian Mortgage Investors v. Unofficial Noteholders-Debentureholders, etc.*, 607 F.2d 1020 (2d Cir. 1979).

ed's trustee, the plaintiff here, began this adversary proceeding under Part VII of the 1973 Bankruptcy Rules, 411 U.S. 1068, 93 S.Ct. 3147, 37 L.Ed.2d 66 *et seq.*, by filing the complaint, Rule 703, for some of the relief contemplated by Rule 701. That complaint named as defendant the Fruehauf Corporation (Fruehauf), a Michigan company, said to be holding liens on property of the estate, said liens having been given to secure debts owed by Associated. The complaint sought judgment declaring Fruehauf's liens invalid in ten of its eleven causes of action; the eleventh sought a money judgment. Before turning to the legal reactions to the trustee's suit, some explanation of the relationship between Associated and Fruehauf in the context of this controversy needs to be described, for, although their history of doing business was extensive, only two specific transactions bottom the trustee's action.[2]

The first is relevant to the first nine causes of action. On March 27, 1975, a so-called Pay Out Agreement was executed. This agreement consolidated all the debts then owing by Associated which, with various allowances and credits, resulted in a net debt to Fruehauf of just over $930,000. This debt was to be liquidated on an installment basis—twenty four consecutive monthly payments at a 14% per annum interest rate. The last paragraph of this Pay Out Agreement was as follows:

> "We further agree that all collateral you now hold for any of our obligations to you shall secure this debt and any other debt we may now owe you or may hereafter incur to you . . . and shall further extend to and secure any advances you may make to the Chase Manhattan

Bank under a certain participation agreement with said Bank dated January 28, 1975."

The second transaction underlies the tenth and eleventh causes of action alleged by Associated's trustee. This was an October 14, 1975 Loan Agreement pursuant to which Fruehauf loaned Associated about $225,000 to enable it to purchase certain properties. To secure this loan, Associated gave Fruehauf a first lien on the properties purchased.[3]

The trustee now seeks to invalidate the liens, if any, held by Fruehauf based on the above-mentioned transactions, and seeks recovery of monies transferred to Fruehauf. The complaint sets forth eleven claims for relief, briefly summarized as follows at page 2 of the affidavit in support of the trustee's cross-motion for summary judgment:

> "The first claim seeks a judgment declaring a 'security' issued by Associated to Fruehauf on or about March 27, 1975 to be null and void *ab initio* as a result of a violation of sections 214 and 20a of the Interstate Commerce Act in that authority was neither sought from nor granted by the Interstate Commerce Commission ("ICC") for the issuance of the 'security'.
>
> The second, third, fourth and fifth claims (all in the alternative to the first claim and to each other) each seek a judgment declaring the alleged lien of Fruehauf respecting certain property of Associated to be unenforceable as against the Trustee due to Fruehauf's failure to comply with a multitude of Uniform Commercial Code ("UCC") requisites for the creation

**2.** Briefly, on January 10, 1973, Associated and Fruehauf signed a Lease Agreement whereby Fruehauf leased 500 trailers to Associated. On April 22, 1974, Associated and Fruehauf signed a Retail Installment Contract whereby Fruehauf agreed to sell 59 trailers to Associated, to be paid on an installment basis, with Fruehauf retaining a security interest in the vehicles, such interest being duly noted on the face of the title certificates. On July 3, 1974, Associated entered into a Sale and Leaseback Agreement pursuant to which Associated sold some 848 trailers to Fruehauf which transferred them

to its wholly-owned subsidiary, Fruehauf Rental Equipment, Inc., from which Associated then leased back the equipment. As of March 27, 1975, it is alleged that Associated owed upwards of one million dollars to Fruehauf under various agreements, and was unable to repay on the then-existing terms.

**3.** These properties have been sold. A sum sufficient to satisfy its asserted lien has been paid to Fruehauf subject to its recovery in this suit if the trustee's challenge to the lien is sustained.

and perfection of a valid and enforceable security interest." [4]

"The sixth, seventh, eighth and ninth causes of action (all in the alternative to the first five and to each other) each seeks judgment declaring the alleged lien of Fruehauf to be void and unenforceable as against the trustee because, it is pleaded, the underlying transaction constitutes a fraudulent transfer pursuant to Section 67d of the Act, 11 U.S.C. (1976 ed.) § 107d.

The tenth cause seeks judgment declaring a 'security' issued by Associated to Fruehauf on or about October 14, 1975 to be null and void *ab initio* as a result of a violation of sections 214 and 20a of the Interstate Commerce Act in that the Interstate Commerce Commission's 'authorization' for the issuance of this 'security' was based upon false representations to that agency.

The eleventh claim seeks the return to the trustee by Fruehauf of $216,409.09 plus interest, which principal sum was turned over by the trustee to Fruehauf without prejudice to his right to seek its return in the event the trustee's challenge to the validity of Fruehauf's underlying alleged lien was upheld." See footnote 3, *supra.*

Prior to answering the allegations made by the trustee, Fruehauf moved pursuant to Federal Rule of Civil Procedure 12(b)(6),

applicable here by reason of Bankruptcy Rule 712(b), 411 U.S. 1074, 93 S.Ct. 3151, 37 L.Ed.2d 68, for an order dismissing the complaint for failure to state a claim upon which relief could be granted. F.R.Civ.P. 12(b)(6) provides as follows:

"(b) Every defense, in law or fact, to a claim for relief . . . shall be asserted in the responsive pleading thereto . . . except that the following defenses may at the option of the pleader be made by motion:

(6) Failure to state a claim upon which relief can be granted . . . .

If, on the motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

■ On a Rule 12(b)(6) motion, the well-pleaded material allegations of the complaint are taken as true, but conclusions of law or unsupported deductions of fact are not admissible. 2A *Moore's Federal Practice* (Second Edition) ¶ 12.08; *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Iroquois Indus., Inc. v. Syracuse China Corp.,* 417 F.2d 963 (2d Cir.

---

**4.** This lien is apparently based on the Pay Out Agreement and a Chattel Mortgage and Security Agreement dated April 29, 1975 specifically incorporating the Pay Out Agreement and which granted to Fruehauf as security the following:

"All personal property and fixtures of the undersigned, whether now or hereafter existing or now owned or hereafter acquired and wherever located, of every kind and description, tangible or intangible, including, but not limited to, the balance of every deposit account, now or hereafter existing, of the undersigned with the Creditor and any other claim of the undersigned against the Creditor, now or hereafter existing, and all money, goods, instruments, securities, credits, claims, demands, all of the undersigned's Federal and State motor carrier operating rights now owned or hereafter acquired by undersigned including those operating rights evidenced by Interstate No. MC

104004 and all Subs thereto and any other property, rights and interests of the undersigned, and shall include the proceeds, products and accessions of and to any thereof (all of said collateral being sometimes referred to hereinafter as the 'Security')."

"Exhibit B", Defendant's affidavit in support of motion to dismiss. It should also be mentioned that on June 23, 1975 Fruehauf had filed a Financing Statement with the Secretary of State in New Jersey claiming a security interest, pursuant to the above-mentioned Agreements in: "All personal property of [Associated] tangible or intangible including, without limitation, all goods, instruments, securities, operating equipment and all Federal and state motor carrier operating rights now owned or hereafter acquired."

"Exhibit C", Plaintiff's cross-motion for summary judgment.

1969), *cert. denied,* 399 U.S. 909, 90 S.Ct. 2199, 26 L.Ed.2d 561 (1969); *A.T. Broa v. Perlow,* 375 F.2d 393 (2d Cir. 1967); *M & M Transportation Co. v. U. S. Industries, Inc.,* 416 F.Supp. 865 (D.C.N.Y.1976). While it is true that the challenged pleading must set forth sufficient information to outline the elements of the claim, the Supreme Court has observed that:

> "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

*Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

■ Fruehauf's assault on the complaint rests on the conclusions that it is insufficient on its face, that it is based on unwarranted legal conclusions, and that it is devoid of factual bases to support many of its allegations. While this complaint does not—nor must it—set forth in detail the factual underpinnings of its claims, the court finds as to the first nine causes of action, that the complaint presents well-pleaded claims for relief, cognizable at law, which give Fruehauf fair and adequate notice of the bases of these claims. Without making any determination at this point on the merits of the trustee's case, it is nonetheless clear that the pleading of these causes is more than adequate to repel this motion to dismiss. The motion to dismiss is denied as to causes of action one through nine.

Following the filing of Fruehauf's Rule 12 motion, the trustee cross-moved for summary judgment on the first, second, third, fourth and/or fifth causes of action.[5] The court has reviewed, as part of the record on this cross-motion, all pleadings, affidavits and the local Rule 9(g) statements submitted by the parties, and agrees that as to the first four causes of action, there are no genuine issues as to any of the material facts, and that the court may "pierce the allegations in the pleadings", examine the

evidence presented, and make a determination as a matter of law. *Heyman v. Commerce and Industry Ins. Co.,* 524 F.2d 1317 (2d Cir. 1975); 6 *Moore's, supra,* ¶ 56.15[3]; *SEC v. Research Automation Corp.,* 585 F.2d 31 (2d Cir. 1978).

Turning to the first cause of action, the complaint alleges that:

> "The Pay Out Agreement constituted an issuance of a security by Associated pursuant to Sections 214 and 20a of the Interstate Commerce Act, 49 U.S.C. §§ 314 and 20a.
>
> The issuance of the security (the Pay Out Agreement) by Associated was unlawful since no application was made to the Interstate Commerce Commission to secure authority for the issuance of the security and, as a result thereof, the Interstate Commerce Commission did not by order authorize the issuance of the security. The security issued . . . is void and unenforceable [for lack of] the authorization of the Interstate Commerce Commission for its issuance pursuant to Sections 214 and 20a(11) of the Interstate Commerce Act, 49 U.S.C. §§ 314 and 20a."

Thus, the trustee concludes, Fruehauf can have no lien on Associated's property as the Pay Out Agreement was void *ab initio* for the reasons described, and insufficient as a basis to grant a consensual lien.

■ The parties agree that Associated was an interstate common carrier by motor vehicle subject to the regulatory jurisdiction of the Interstate Commerce Commission pursuant to the provisions of the Interstate Commerce Act. They also agree that the Pay Out Agreement signed by the parties on March 27, 1975 constituted a consolidation of various debts owed by Associated to Fruehauf, to be repaid according to a specific schedule. Both parties concede that as of March 27, 1975, the only security interest held by Fruehauf in property of Associated was in a certain group of 59 trailers (which lien plaintiff acknowledges as binding). But, Fruehauf further insists

---

**5.** Plaintiff eschewed a motion for summary judgment on causes 6–11, on the grounds that material issues of fact exist which would re-

quire a trial on the merits and therefore defeat such a motion.

that the subsequent Security Agreement comprised a single transaction with the Pay Out Agreement, and granted Fruehauf a security interest in all the property listed. This premise is also not in dispute although the trustee seems to have chosen to disregard it.[6]

Central to the validity of the competing legal positions as to the first cause of action, is the meaning to be ascribed to the word "security" in the Interstate Commerce Act, and the question as to whether the Pay Out Agreement gave such a security. If so, application to the ICC for approval of the transaction was required, failing which the entire transaction was void *ab initio*, and the trustee is correct. And so, the inquiry must begin with the statute.

In 1935, the scope of the Interstate Commerce Act (ICA) was extended to cover common carriers by motor vehicle. 49 U.S.C. §§ 301–327, Part II of the ICA. Section 214 of the ICA, 49 U.S.C. § 314 (now 49 U.S.C. § 11302), makes the provisions of Sections 20a(2)–(11), (now 49 U.S.C. §§ 11301(a)(2)–(11)), applicable to motor common carriers.

Section 20a provides in relevant part as follows:

"(2) It shall be unlawful for any carrier to issue any share of capital stock or any bond or other evidence of interest in or indebtedness of the carrier (hereinafter in this section collectively termed 'securities') . . . unless and until, and then only to the extent that, upon application by the carrier, and after investigation by the commission of the purposes and uses of the proposed issue and the proceeds thereof . . . the commission by order authorizes such issue.

\* \* \* \* \* \*

(11) Any security issued . . . for which under the provisions of this section

the authorization of the commission is required, shall be void, if issued . . . without such authorization therefor having first been obtained . . . ."

Fruehauf maintains that this language is clear and that it is applicable only to "securities" as that word is normally used, referring to stocks and bonds, and that the phrase "other evidence of interest in or indebtedness of the carrier" (following the "ejusdem generis" rule of statutory construction) must apply only to similar types of securities, and not to the lien interests created by the transaction here.

The trustee, not surprisingly, takes the position that the financial dealings between Associated and Fruehauf, whereby the latter was given security interests in the former's property as collateral, is precisely the kind of security falling within the reach of Section 20a of the ICA. From this premise, the trustee presses the argument that for want of the positive action by the Interstate Commerce Commission (ICC) acting within the scope of the section, Fruehauf's lien is void.

Each of the parties cites authority in support of his legal position, and there is no question but that the Commission has vacillated in recent years over its interpretation of the scope of these sections. See, in support of the trustee's position, *Expanded Definition of Term "Securities"*, 348 ICC 288 (1975); *Expanded Definition of Term "Securities"*, 340 ICC 817 (1972); *Transcontinental Bus System, Inc., Notes*, 80 MCC 54 (1959). For Fruehauf, see *Lehigh Valley R. Co. Conditional Sale Contract*, 233 ICC 359 (1939); *REA Express, Inc. v. Alabama Great Southern R. Co.*, 427 F.Supp. 1157 (S.D.N.Y.1976), *aff'd sub nom. Sowerwine v. United States*, 431 U.S. 961, 97 S.Ct. 2914, 53 L.Ed.2d 1057 (1977). Both sides have

---

**6.** The trustee alleges that Fruehauf is attempting to assert as an alternative basis for its lien its alleged participation in a loan made by Chase Manhattan Bank in late 1974 which granted rights in additional property securing that loan. But, Fruehauf does not claim that its participation in that loan is the basis for the defense now presented; instead, it relies exclusively on the Pay Out Agreement and the subsequent Security Agreement. This tack by the trustee serves to obfuscate the fact that he does not deny that the documents mentioned are all part of one transaction for purposes of the creation of the Fruehauf lien here challenged.

therefore come prepared with these respectable title deeds. But, a recent expression by the Court of Appeals for the District of Columbia seems to this court to be persuasive and controlling on this subject.

In *Association of American Railroads v. U. S. A.*, 195 U.S.App.D.C. 372, 603 F.2d 954 (D.C.Cir.1979), the court concluded that various orders of the ICC extending the scope of its jurisdiction over common carrier financing had exceeded the scope of the authority conferred by the relevant provision of the ICA.[7] Apparently, the ICC had attempted to expand the scope of Section 20a to comprehend the modern types of financing (other than traditional securities) becoming more and more common in the carrier industry. The Court of Appeals found this reading improper in light of the legislative history, the scheme of the statute, as well as what it saw as the clear words Congress used. The court said at 195 U.S. App.D.C. at 382, 603 F.2d 964:

"[B]y reading the statute to include stocks and bonds as well as financing dissimilar to these securities, the ICC has rendered nugatory the statute's express reference to *specific* securities. Under the ICC's interpretation, Congress granted the Commission jurisdiction over *all* 'evidence[s] of . . . indebtedness of' a carrier. The statute, however, clearly carries no such grant of authority.

\*　　\*　　\*　　\*　　\*　　\*

In addition to the plain language of section 20a(2), the entire scheme of the statute compels the Court to restrict its scope to obligations that are generally similar to stocks and bonds".

See also *REA Express, Inc. v. Alabama Great Southern Railroad*, 427 F.Supp. 1157 (S.D.N.Y.1976), *aff'd sub nom. Sowerwine v. United States*, 431 U.S. 961, 97 S.Ct. 2914, 53 L.Ed.2d 1057 (1977); *United States v. New York, New Haven & Hartford Railroad*, 276 F.2d 525 (2d Cir. 1959), *cert. de-*

---

**7.** In an order issued in 1975, *Expanded Definition of Term "Securities"*, 348 ICC 288 (1975), the Commission had defined "evidence of interest in or indebtedness of the carrier" as including: (1) advances payable to affiliated companies; (2) loan agreements; (3) credit agree-

*nied*, 362 U.S. 961, 80 S.Ct 877, 4 L.Ed.2d 876 (1960), where the court observed that:

"[I]n enacting 20a Congress did not grant the Commission general power to pass judgment on all obligations incurred by railroads [or motor carriers] and that, in this early essay in Federal security regulation, Congress did not enact so comprehensive a definition of 'security' as it later did in the Securities Act of 1933 . . . ."

276 F.2d at 533.

The court in *Association of American Railroads, supra*, after finding that the legislative history of Section 20a focuses exclusively on stocks and bonds of the carrier, and after referring to *Interstate Investors, Inc. v. U. S.*, 287 F.Supp. 374, 387 (S.D.N.Y. 1968), *aff'd per curiam*, 393 U.S. 479, 89 S.Ct. 707, 21 L.Ed.2d 687 (1969), for the proposition that the dominant Congressional purpose in enacting Section 20a was to protect investors in the securities of common carriers, enunciated a test for use in determining the applicability of Section 20a in these words:

"In section 20a, the Interstate Commerce Act draws a distinction between a carrier's recurring financial transactions and its major financings made through the issuance of securities.

195 U.S.App.D.C. at 388, 603 F.2d at 970, and

[T]he Court finds that there are two salient factors in determining whether a particular transaction is a security under Section 20a(2). First, it must be a security, and reference to other areas of federal securities regulation will be helpful in interpreting that term. Secondly, the statute and the legislative history indicate that Congress intended to limit the statute to *issues* of securities. This would generally mean public issues sold on the market . . . ."

---

ments; (4) mortgages; (5) chattel mortgages; (6) deeds of trust; (7) equipment trusts; (8) security agreements; and (9) purchase agreements covering property having a useful life in excess of one year.

195 U.S.App.D.C. at 389, 603 F.2d at 971. See also *S.E.C. v. Diversified Industries, Inc.*, 465 F.Supp. 104 (D.D.C.1979). The court goes on to observe that:

"[T]he test which has developed in other areas reflects the sound distinction drawn between a security, which is a genuine investment, and other transactions which may involve a mere sale of goods on an installment basis or the like."

195 U.S.App.D.C. at 389, 603 F.2d at 971.

This is precisely the common sense test of the Uniform Commercial Code which was characterized by the Court of Appeals for this Circuit as the "first national law of commerce" in *United States v. Wegematic Corp.*, 360 F.2d 674, 676 (1966). And if anything fits that test it is the commercial relationship between Associated and Fruehauf which is the nub of this dispute. Simply stated, their transactions underlying the creation of Fruehauf's lien status cannot be equated with a security evidencing an investment. Sections 8–102 and 9–102 of the Uniform Commercial Code mean nothing if their essential significance is not to distinguish the one from the other. See, *e. g., Cohn, Ivers & Co., Inc. v. Gross*, 5 U.C.C. Rep. 340, 56 Misc.2d 491, 289 N.Y.S.2d 301 (N.Y.Sup.Ct.App. Term 1968); *Baker v. Gotz*, 16 U.C.C. Rep. 26, 387 F.Supp. 1381 (D.C.Del.1975), *aff'd* 523 F.2d 1050 (3d Cir. 1975) (Investment securities are those which are of a type commonly dealt in upon securities exchanges or markets). For a taste of the cases under Section 9–102 of the Uniform Commercial Code, see *Chrysler Credit Corp. v. Sharp*, 5 U.C.C. Rep. 226, 56 Misc.2d 261, 288 N.Y.S.2d 525 (N.Y.Sup.Ct. 1968); *First County Nat. Bank & Trust Co. v. Canna*, 12 U.C.C. Rep. 951, 124 N.J.Super. 154, 305 A.D.2d 442 (1973).

The case here involves a consensual grant of a security interest, in accepted parlance, a lien.[8] Such security interest is not the issue of securities in the sense of stocks and bonds which is the focus of Section 20a of the ICA. Accordingly, the strictures of that section are immaterial to the validity of the Fruehauf lien. It follows that the trustee's assault on that lien as alleged in his first cause of action fails.

Causes 2–5 also present no genuine dispute as to material issues of fact. Having determined that the Pay Out Agreement was not an investment-type security mandated void *ab initio* for lack of ICC approval under Section 20a of the ICA, the court turns to a determination as to whether this and other related agreements created a security interest as a matter of law, and whether that security interest was perfected in compliance with applicable law, and the extent of the property to which the asserted lien attaches.

The second of the trustee's causes of action alleges that:

"The Pay Out Agreement did not grant to Fruehauf a security interest in property of Associated other than that held as collateral by Fruehauf as of the date of the Pay Out Agreement [i. e., the 59 trailers] . . . the parties not having agreed therein that a security interest should attach to any other property of Associated as required by Section 9–204 of the New Jersey and New York Uniform Commercial Codes then in effect. [Therefore], the security interests claimed by Fruehauf . . . are void . . as against Plaintiff except with respect to the security interest granted by Associated to Fruehauf in the 59 trailers . . . ."

The trustee concludes that the Pay Out Agreement failed to meet the basic requirements of Article 9 of the Uniform Commercial Code necessary to create a valid security interest. But, as Fruehauf points out, the trustee appears to have overlooked an

---

8. While the 1898 Act did not define the word "lien", it did define a secured creditor in Section 1(28), 11 U.S.C. (1976 ed.) § 1(28). The definition of statutory lien in Section 1(29a) distinguishes itself from the consensual lien. Section 101(28) of the 1978 Code defines the consensual lien as distinguished from the judi-

cial lien defined in Section 101(27) and from the statutory lien defined in Section 101(38). The definition of a lien by way of a security interest is new in the 1978 Code. See H.R.Rep. No.95–595, 95th Cong., 1st Sess. 312 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787.

essential document, the "Chattel Mortgage and Security Agreement", dated April 29, 1975, executed by Associated which specifically incorporates the Pay Out Agreement of March 27, 1975, and which grants Fruehauf "as security for the repayment thereof" all the collateral, as described *supra*, at fn. 4.[9]

The documents presented permit no other interpretation than that they are, as Fruehauf claims, a single, integrated understanding between the parties, intended to grant a security interest in the collateral described.

■ In both New York's and New Jersey's versions of the Uniform Commercial Code, Section 9–203 in the former, and Section 9–204 in the latter,[10] there are four basic requirements for the creation of a valid security interest: namely, that a security agreement must have been entered into; that agreement must be in writing if the creditor does not have possession of the collateral; the debtor must have rights in the collateral; and the secured party must have given value. *Doyle v. Northrop Corp.*, 25 U.C.C. Rep. 932; 455 F.Supp. 1318 (D.C. D.N.J.1978). *Marine Midland Bank-Eastern Nat. Ass'n v. Conerty Pontiac-Buick, Inc.*, 14 U.C.C. Rep. 814; 77 Misc.2d 311, 352 N.Y.S.2d 953 (1974). But there is no requirement that all these pre-requisites be met simultaneously. Their significance is that a valid security interest will not attach until they are all complied with.

■ This court finds, and from those findings concludes, that as a matter of law, all the requirements for the creation of a security interest and its attachment (as distinguished from its perfection) were met in this instance. The value given in return for the grant of the security interest was the consolidation and extension of the debts presently owed by Associated to Fruehauf. As stated in § 1–201(44) of the Uniform Commercial Code:

"[A] person gives 'value' for rights if he acquires them . . . (b) as security for or in total or partial satisfaction of a pre-existing claim."

See *In re Platt*, 257 F.Supp. 478, 3 U.C.C. Rep. Serv. 719 (E.D.Pa.1966).[11]

It is clear from the record that the parties intended to create a security interest in the property listed in the April 29, 1975 Agreement, and that such security interest was not limited by the Pay Out Agreement of a month earlier solely to the 59 trailers which were already subject to Fruehauf's lien. Reason alone compels this court to reject the claim of the trustee articulated in the second cause of action for to reason otherwise would negate the force of the accepted premise that the parties are presumed to have intended just what their writings set forth.

■ In his third cause of action Associated's trustee alleges that:

"The purported security agreement contained in the Pay Out Agreement is unenforceable under Section 9–203 of the New Jersey and New York Uniform Commercial Codes in that it does not contain an adequate description of the collateral in which the purported security interest was granted. By reason of the foregoing, the security interests claimed by Fruehauf . . . are void and are

---

**9.** The court believes that the trustee has inadvertently misconstrued the law relating to the creation of security interests by relying exclusively on the Pay Out Agreement and by failing to bring to the court's attention the subsequent security agreement, having merely attached it as an exhibit without further discussion.

**10.** The New Jersey Uniform Commercial Code may be found in that State's statutes under N.J.S.A. 12A:1–101 to 12A:10–106. New Jersey has not enacted the 1972 Revision of Article 9. The New York Uniform Commercial Code may be found in McKinney's Uniform Commercial Code §§ 1–101 to 13–105. New York has enacted the 1972 Revision of Article 9. Thus, the sections referred to in this decision will differ depending on the version involved. For the sake of clarity, the 1972 Revisions will be applied, unless otherwise noted, e.g., where the New Jersey Statute is discussed.

**11.** As represented in the affidavit of one of Fruehauf's officers, Donald P. Bieschke, this agreement "represented a very substantial accommodation most urgently sought by Associated at that time."

not enforceable as against Plaintiff except with respect to the security interest granted by Associated . . . in the 59 trailers . . . ."

Here, too, the court is confronted with the trustee's failure to view the Security Agreement of April 29, 1975 as an integral part of the entire secured transaction. This court has already determined that Fruehauf's security interest attached when the Security Agreement was signed, all other criteria having been met. *M. Rutkin Elec. Supply Co., Inc. v. Burdette,* 4 U.C.C. Rep. 1074, 98 N.J.Super. 378, 237 A.2d 500 (1967). That determination is affirmed here. To be sure, the security agreement must adequately describe the property involved. The trustee attacks the adequacy of the description in the last paragraph of the Pay Out Agreement which facially, at least, appears to offer only the 59 trailers as security for the entire consolidated debt. But that agreement does not stand alone isolated in time and space from the security agreement made a month later. So much the court has already concluded in deciding that the second cause of action must fall. Accordingly, it is to that April 29, 1975 agreement that the court turns in order to test its content against the description of collateral requirements of the Uniform Commercial Code.

There is an illuminating discussion of the requirement for an adequate description in a security agreement contained in U.C.C. Section 9–203, compared with the requirement of filing a financing statement to perfect a security interest by providing public notice, contained in U.C.C. Section 9–402, in White and Summers' treatise, *Uniform Commercial Code* (1972) § 23–3 at 787–788:

"[In analyzing the requirement] that the security agreement contain a 'description of the collateral', one should first compare the description requirement in 9–203 to the analogous description requirement (for financing statements) in 9–402. The two description requirements are intended to perform different functions and they offer different interpretive ques-

tions. The function of 9–203 is that of a statute of frauds; it is designed to minimize disputes between parties to the transaction over whether an agreement exists and over whether a certain item of collateral is or is not included in the security agreement. The function of the description in 9–402 is to put third parties on notice of the secured creditors claim."

See *Leasing Service Corp. v. American National Bank and Trust Co.,* 19 U.C.C. Rep. 252 (D.C.N.J.1976); *In re Laminated Veneers, Inc.,* 8 U.C.C. Rep. 602 (E.D.N.Y. 1970), *aff'd* 11 U.C.C. Rep. 911; 471 F.2d 1124 (2d Cir. 1973). (The Security Agreement must describe the collateral sufficiently by items or types to permit identification).

The collateral description contained in the Security Agreement here includes all personal property of Associated, and goes on to specify the types and kinds of property within the scope of the interest. See fn. 4, *supra.* It is certainly sufficient under cases which have construed the appropriate sections of the Code, *e. g., In re Laminated Veneers, Inc., supra,* and under Section 9–110, which states that:

"For the purposes of this Article any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described".

See *In re Sarex Corp.; Goudeau v. Arzt,* 509 F.2d 689 (2d Cir. 1975). As a matter of law, the Security Agreement's clear language convinces this court that the creation of a security interest in clearly-defined property of Associated was intended and was achieved by the parties.

The court is further moved to this result upon being reminded of its own words relevant to the spirit in which the language of the statute should be construed. In *In re Laboratory Precision Products, Inc.,* 4 U.C.C. Rep. 1139, 1141–1142 (S.D.N.Y.1968), this court said that

"Section 1–102(1) provides that the Uniform Commercial Code 'shall be liberally construed and applied to promote its underlying purposes and policies.' . . .

Among these are the simplification, clarification and modernization of the law covering commercial transactions and the desire to foster the continued expansion of commercial practices through custom, usage and agreements of the parties."

The third cause of action if allowed to prevail on the totality of the undisputed evidence would cut against the grain of the underlying thrust of the Uniform Commercial Code, would negate the care taken by Fruehauf to receive the full intended effect of its bargain with Associated and would thereby give an unwarranted windfall to unsecured creditors at the expense of a secured creditor which protected itself as the law commands.

Clutching at another straw, the trustee shifts his attack in the fourth cause of action from the terms of the Security Agreement tested against the Uniform Commercial Code (his third cause of action, *supra*), to the terms of the Financing Statement tested against that statute. He seeks summary judgment on his allegations that:

> "The purported security interest . . has not been perfected in that the description of the collateral set forth in the . . . Financing Statement is insufficient in that it does not comply with the standard set forth in Section 9–402 of the New Jersey and New York Uniform Commercial Codes. By reason of the foregoing, the security interest claimed by Fruehauf . . . is void and is not enforceable as against Plaintiff."

■ Section 9–402(1) of the 1972 version of the Uniform Commercial Code [12] provides that: "A financing statement is sufficient if it . . . contains a statement indicating the types, or describing the items, of collateral." The purpose of a financing statement is to provide public notice of the existence of and the type of the security interest, and to provide information as to where to find further detailed information, usually in the Security Agreement itself. Of course, the Financing Statement cannot make do for the Security Agreement, but

here, contrary to the trustee's position, both instruments exist. See *In re Laminated Veneers, supra.*

■ In accordance with Section 9–302, the filing of the Financing Statement was necessary to perfect Fruehauf's interest in the collateral described in the Security Agreement. The court concludes that the Financing Statement filed was sufficient as a matter of law, and thus enough to perfect Fruehauf's interest against a subsequent lien creditor, including the trustee in bankruptcy. See Section 9–301 of the Uniform Commercial Code and Section 70c of the Act, 11 U.S.C. (1976 ed.) § 110(c). See also *P. S. Products Corp. v. Equilease Corp.*, 435 F.2d 781 (2d Cir. 1970).

■ The final assault on Fruehauf's lien turns from the content of the Financing Statement to the place where it was filed, for unless filing was proper in accordance with the Uniform Commercial Code, the trustee must prevail on this, his fifth cause of action, despite his lack of success on the other causes set forth in the complaint. Both sides have agreed that the Financing Statement here at issue was filed with the Secretary of State in New Jersey, Associated's principal place of business. From this fact the trustee alleges that:

> "The purported security interest in all personal property of [Associated] tangible or intangible including without limitation, all goods, instruments, securities . . . now owned or hereafter acquired which was located at or prior to the time of Associated's bankruptcy in the States . . . of Connecticut, Delaware, Georgia, Illinois, Indiana, Kentucky, Maine, Maryland, Massachusetts, Michigan, Missouri, New Hampshire, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, Tennessee, Vermont, Virginia, West Virginia and Wisconsin and in the District of Columbia has not been perfected in that Fruehauf failed to file financing statements in the proper places within each

**12.** See fn. 10, *supra.*

such State . . . as required by Sections 9–401 of the respective Uniform Commercial Codes of each of said States . . . ."

The trustee, pointing to twenty three other states and the District of Columbia, says that Section 9–401(1)(c) of the Uniform Commercial Code requires a filing with the appropriate recording officers of each of the 23 other States and of the District of Columbia in order to perfect Fruehauf's claimed security interest in all of Associated's personal property.

The cases offered by the trustee on this point are not relevant; Fruehauf has offered no case law at all in support of its position that the mode of filing was adequate. It is the court's view that the agreed facts are inadequate to enable this court to determine whether Fruehauf's interest was perfected as to all of Associated's property.

To determine when and if filing is required to perfect a security interest in property, and if it is required, where the filing must be made, several different provisions of the Code are relevant. The exact nature of the property also comes into play.

Section 9–302 of the Uniform Commercial Code provides that

"(1) A financing statement must be filed to perfect all security interests except the following:

(a) a security interest in collateral in possession of the secured party under Section 9–305;

(b) a security interest temporarily perfected in instruments or documents without delivery under Section 9–304 . . . ."

Section 9–305 of the Code allows perfection of an interest in goods, instruments, money, documents, etc. by the secured party's taking possession.

Section 9–304(1) provides that:

"(1) A security interest in chattel paper or negotiable documents may be perfected by filing. A security interest in money or instruments (other than certificated securities or instruments which constitute part of chattel paper) can be perfected only by the secured party's taking possession, except as provided in subsections (4) and (5) of this section and subsections (2) and (3) of Section 9–306 on proceeds."

Additionally, Section 9–103 of the Code, relating to the perfection of security interests in multiple state transactions, offers additional, or alternative, rules for the perfection of interests in certain types of property, which may be located in more than one state. (Section 9–103(1) relates to documents, instruments, and ordinary goods; Section 9–103(3) to accounts, general intangibles and mobile goods; Section 9–103(4) to chattel paper, etc.) (See also Section 1–105 on choice of law rules).

Subsection 9–401(1) provides in relevant part that, when filing is required:

"(1) The proper place to file in order to perfect a security interest is as follows:

\* \* \* \* \* \*

(b) [W]hen the financing statement is filed as a fixture filing (Section 9–313) and the collateral is goods which are or are to become fixtures, then in the office where a mortgage on the real estate would be filed or recorded;

(c) in all other cases, in the office of the [Secretary of State].

(2) A filing which is made in good faith in an improper place or not at all of the places required by this section is nevertheless effective with regard to any collateral as to which the filing complied with the requirements of this Article . . . ."

The Security Agreement in question granted a security interest in all personal property and fixtures, deposit accounts, money, goods, instruments, securities, credits, claims, demands and all Federal and State motor carrier operating rights; the financing statement filed in New Jersey with the Secretary of State listed personal property, tangible or intangible, including goods, instruments, securities, operating equipment and motor carrier operating rights.

Thus, it is impossible for this court to say, based on the meager record presented, whether or not Fruehauf complied with the applicable laws in perfecting its interests in all the types of personalty listed in the Security Agreement, by filing where necessary, or taking into possession property only perfectible in that mode. Since this court cannot determine on the basis of the record before it, the extent to which filing with New Jersey's Secretary of State perfected Fruehauf's interest in Associated's property, summary judgment must be denied, and a trial on the merits held, with evidence to be adduced as to the facts sufficient to appraise the merit of the fifth of the trustee's assault on Fruehauf's lien.

In light of the matters thus far treated, it follows that the trustee, as plaintiff, is not entitled to summary judgment in his favor on any of the first five causes of action of his complaint. Accordingly, his cross-motion for summary judgment is denied. But to say this is not at one with refusing such relief to Fruehauf as is appropriate. As seen, Fruehauf moved to dismiss the complaint under Rule 12(b)(6), F.R.Civ.P., and its analogue in the Bankruptcy Rules, Rule 712, 411 U.S. 1074, 93 S.Ct. 3151, 37 L.Ed.2d 68, more particularly, Rule 712(b). In light of the excursion by both sides beyond the face of the complaint, Fruehauf's Rule 12(b)(6) motion is "treated as one for summary judgment and disposed of as provided in Rule 56. . . ." Under Rule 56, F.R.Civ.P., (and Bankruptcy Rule 756), summary judgment is warranted as to the first four causes of action in the complaint and it is granted in favor of Fruehauf dismissing them as a matter of law. In short, these four bases of the trustee's challenge are rejected. As to these, the court is satisfied that the parties intended to and did create a security interest in collateral owned by Associated, that the interest duly attached, and that as to the predicates there stated for the trustee's position that the Fruehauf lien is invalid, these are insufficient to defeat that lien.

■ However, the court cannot adjudicate the validity and reach of Fruehauf's lien on the papers alone on these motions because the trustee has levelled other challenges. As an ideal hypothetical judicial lien creditor under Section 70c of the Act, 4B *Collier on Bankruptcy* (14th ed. 1978) ¶ 70.50[2], a trustee is neither limited to his actual challenges nor is he precluded from asserting his status and the powers drawn from such status on one theory merely because he has been unsuccessful on others.

■ Causes 6–9, as already mentioned, seek judgment declaring Fruehauf's lien void and unenforceable as against the trustee on the ground that it was based on a fraudulent transfer under Section 67d(2) of the Bankruptcy Act, 11 U.S.C. (1976 ed.) § 107(d)(2). The trustee refrains, and wisely so, from seeking Rule 56 summary judgment, acknowledging that Fruehauf has raised substantial questions regarding the factual bases of the allegations in the trustee's complaint.

As to these causes said to be fraudulent transfers denounced by Section 67d, Fruehauf says that the lien and security interest established by the Pay Out Agreement and the Security Agreement were granted in connection with a substantial restructuring of the debt owed by Associated to Fruehauf and on which Associated was in default. Fruehauf goes on to say that its immediate right to foreclose or repossess property constituted fair and present consideration for the granting of the interests in Associated's property, and that there is no extrinsic evidence of any intent to hinder, delay or defraud existing or future creditors.

Causes 6–9, therefore, state well-pleaded grounds for relief, and Fruehauf's motion to dismiss under F.R.Civ.P. 12(b)(6) is denied. The issue of fraudulent transfer under Section 67d(2), as both parties recognize, is predominantly one of factual analysis of the nature of the transfer, the validity of the consideration, the intent of the parties, etc. These factual determinations cannot be made on the face of the pleadings. Consequently, they must be set down for trial before this court.

The 10th and 11th causes of action relate to a transaction between the parties on

October 14, 1975. At that time, Associated and Fruehauf executed a Loan Agreement whereby Fruehauf loaned Associated $225,000 to enable Associated to exercise an option to purchase two terminal properties it had previously leased, and Fruehauf took back a mortgage on those properties. The parties had submitted an application for authorization of the agreement to the Interstate Commerce Commission simultaneously with a motion to dismiss before the Commission on the theory that this was not a "security" falling within the Commission's jurisdiction under Section 20 of the ICA. This motion was granted by the Commission. Nonetheless, the trustee alleges that the application to the Commission contained material misrepresentations and omissions which caused the Commission to dismiss the application. As a result, the trustee now complains that the whole transaction was void *ab initio* for failure to obtain Commission authorization as is required under the Interstate Commerce Act. Accordingly, the trustee says that it follows that Fruehauf's mortgage on the properties, and its claim to the proceeds of their sale, is null and void, and falls to the trustee.

Pursuant to this court's order of May 10, 1977, the property was sold free and clear of liens with an amount equal to Fruehauf's claim to be transferred to Fruehauf, to be held subject to the trustee's right to recover if the lien should be invalidated. Cause 11, therefore, seeks refund of the monies paid over, plus interest, should this court declare the mortgages void.

■ It appears to this court that no claim upon which relief can be granted is presented by causes of action 10 and 11 of this complaint. 28 U.S.C. § 1336, read in conjunction with 28 U.S.C. §§ 2321 and 2342, provides for exclusive jurisdiction in the courts of appeal to "determine the validity of . . . (5) all rules, regulations, or final orders of the Interstate Commerce Commission . . .". 28 U.S.C. § 2342(5); *Schuler v. Federal R.R. Administration of U.S. Dept. of Transportation*, 404

F.Supp. 920 (S.D.N.Y.1975). This exclusivity of jurisdiction has been strictly enforced. *Schwartz v. Bowman*, 244 F.Supp. 51 (S.D.N.Y.1965). Other courts may not make independent determinations of the validity of Interstate Commerce Commission actions. *Pennsylvania R. Co. v. U. S.*, 363 U.S. 202, 80 S.Ct. 1131, 4 L.Ed.2d 1165 (1960).[13]

■ In short, this court is bereft of any basis to assert jurisdiction to review, much less set aside, the complained-of determination made by the Commission in this matter. When all is said and done, Congress has confided primary jurisdiction to the Interstate Commerce Commission, the agency in the area relevant to this case charged with the expertise needed to effectuate the spirit and purpose of the Interstate Commerce Act. This court is neither given the power to act in the first instance nor to review. See *Nathanson v. N.L.R.B.*, 344 U.S. 25, 30, 73 S.Ct. 80, 83, 97 L.Ed. 23 (1952). Exhibits "C", "D" and "E" of Defendant's Affidavit in Support of its Motion to Dismiss clearly show that all facts pertaining to the Agreement of October 14, 1975—the terms of the loan and the granting of the mortgages—were duly presented to the Commission, and that the Commission dismissed the application based on the same facts presented to this court. Nothing is presented to this court other than bald assertions by the trustee, without allegations of fact, that there were material misrepresentations.

It follows that Fruehauf's motion to dismiss these causes of action must be and is granted based on the credit and mortgage agreement between the parties, for, as stated by the I.C.C. in its order dated March 26, 1976:

"[U]nder the proposed credit agreement, no promissory notes or other securities will be executed either in connection with the agreement or when advances thereunder are actually made, [and] . . . the proposed agreement does not constitute an evidence of indebtedness of a

13. Note that by authority of 28 U.S.C. §§ 1336(a) and 2321(b) the District Courts retain jurisdiction over certain enforcement procedures.

carrier within the purview of Sections 20a and 214 of the Act as presently interprete [sic], and should therefore be dismissed, see *Capital Transit Co.—Securities*, 30 M.C.C. 17 (1944)."

Let an order be submitted consistent with this opinion. Upon that order becoming final, the parties are to inform the court of their availability for a conference to determine a time for Fruehauf to file its answer to causes of action 5, and 6–9 inclusive, the need for resort to discovery, the time needed and the fixing of a realistic date for trial.