McHugh, J.
This is a case in which the plaintiff, James W. Mangano claims that the defendant, Town of Wilmington (“Town”), wrongfully rejected his bid to purchase Town property that the Town Meeting had declared surplus and had ordered the Town selectmen to sell. Both sides have filed cross motions for summary judgment on facts that are essentially undisputed.
BACKGROUND
On April 26, 1997, the Wilmington Town Meeting voted to authorize the Town to transfer land located on Rollins Road to the selectmen so that the selectmen could sell the property in accordance with the provisions of general laws chapters 30B. In accordance with procedures that no one here challenges, a determination had been made before that Town Meeting that the property was no longer needed for any Town purposes. The precise language of the motion made on the floor of Town meeting and approved by the voters is as follows:
*27 I move that the Town vote to authorize transfer of the care, custody, management and control of a certain parcel of land owned by the Town of Wilmington, hereinafter described [,] to the Selectmen of the Town of Wilmington, said land having been determined to be no longer needed for any municipal purpose, and for the express purpose of conveying the same, all in accordance with the General Laws Chapter 30B; and further that the Selectmen be and are hereby authorized to grant and convey such interest in the land as is owned by the Town of Wilmington for a price of not less then $8,850 and upon such terms and conditions as shall be determined by the Selectmen in accordance with Chapter 3, Section 16 of the By-laws of the Inhabitants of the Town of Wilmington Revised.
Pursuant to this authorization, the Director of Planning and Conservation, with the Selectmen’s authorization, published a “Notice of Request for Proposals-Disposiüon of Town-Owned Land” in the local newspaper. The notice stated that the "fair market value” of the property was $8,850 and stated that the Town was disposing of the properly in accordance with G.L.c. 30B. The notice further stated that “[T]he Town reserves the right to reject any and all proposals.” No such statement, however, was contained in the formal “Request for Proposals (Bids)” the Town prepared with respect to the property. Instead, that Request simply stated that “[t]he comparative criteria for selection of the bidder is [sic] price. The disposition will be made to the bidder who meets the minimum criteria and offers the highest price.”
After the notice was published, the Town received three bids. The first and second bids were submitted by John and Cheiyl Spacklin. The Spacklin’s first bid was in the amount of $8,901 and was followed a week later by a second bid in the amount of $10,001. The third and highest bid was received from the plaintiff on August 20, 1997 in the amount of $10,120.
The Town’s “Request for Proposals (Bids)” stated that “[u]pon selection of the highest, responsive bidder by the Town Manager a Purchase and Sales Agreement will be executed” and suggested that the selected bidder must be able to secure financing and close on the property within sixty days after his or her bid was selected. On October 14, 1997, however, the Wilmington Board of Selectmen met and the Town Manager, Michael Caira (“Caira”), recommended that the property be retained by the Town. Caira told the Selectmen that the sale of the property "may result in the creation of hardship for property owners in the neighborhood.” Following their discussion with Mr. Caira, the Selectmen voted
to refrain from disposing of the [property that is the subject of this action] with the understanding that should the bidding parties request that the Board reconsider their vote at the next meeting, the Board will do so.
No such request was made.[1]
DISCUSSION
A. Standard of Review
The Court is empowered to grant summary judgment where there are no genuine issues of material fact and where the nonmoving party is entitled to judgment as a matter of law. Community Nat'l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or by demonstrating that proof of that element is unlikely to be forthcoming at trial. Flesner v. Technical Common. Corp., 410 Mass. 805, 809 (1991). If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat the motion. Pederson, supra, at 17. The opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment. LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
B. Authority of Town to Rescind Authorization to Dispose of Property
A town may hold real estate for the public use of its inhabitants and may convey the same by deed. G.L.c. 40, §3. No common-law rule or state statute requires a municipality to sell land to the highest bidder. Gennari v. City of Revere, 23 Mass.App.Ct. 979, 979 (1987) (rescript); see Randall and Franklin, Municipal Law and Practice, Vol. 18B, §1194. Instead, setting the terms and conditions for sale of municipal land is a function of the city or town’s legislative body. Gennari at 979. In that regard, cities and towns have broad discretion regarding the criteria for selecting a buyer and setting the terms of the sale.
To be sure, the Town did not reserve in its “Request for Proposals (Bids)" a right to reject any bids filed with respect to the land in question. Plaintiff acknowledges, however, that the published notice for the parcel’s sale did contain language reserving the Town’s -right to reject all bids. There is no question that the plaintiff was aware of that reservation when he submitted his bid. Accordingly, I am of the opinion that plaintiff was adequately notified of the reservation even though it did not appear in the “Request for Proposals (Bids).”
The plaintiffs second and more significant contention is that G.L.c. 30B, §16, the statute pursuant to which the property was put out to bid, contains no language authorizing governmental bodies to reject all *28 bids for property they have placed on the market for sale. In support of his contention that the absence of any such language means that the legislature did not intend to allow withdrawal of property from the market after bids had been received, Plaintiff points to language in G.L.c. 30B, §9 which does allow cancellation of an invitation to bid when personal property or services are concerned.[2] The legislature’s omission of any similar grant of power in the case of land sales, plaintiff maintains, means that no such grant exists.
Plaintiffs argument, in my opinion, seeks to read too much into legislative silence. A Town’s legislative body, here the Town Meeting, has broad power to control and dispose of Town property on terms and conditions it deems appropriate. See G.L.c. 40, §3. When disposition of real property is concerned, c. 30B, §16 specifies certain procedures the Town must follow in exercising that broad power of disposition and control. Chapter 30B, however, is a procedural statute. There is no sound reason to read a procedural statute as if it fully occupied a substantive field and in the process stripped away through silence substantive powers that otherwise would clearly exist. Cf. Sanford v. Boston Edison Co., 316 Mass. 631, 637-38 (1944). Moreover, plaintiffs construction of the statute would have the effect of transforming the process of disposing of real property from one involving solicitation of offers, see c. 30B, §§2 (“proposal”), 16(c), 16(d), into one that gives members of the public the right to “call” the property; see generally Colt v. Fradkin, 361 Mass. 447, 452 (1972); Cohn, Ivers & Co. v. Gross, 289 N.Y.S.2d 301, 302 (App.Div. 1968); at the highest bid amount. That effect is simply inconsistent with a statutory scheme expressly designed to provide the public properly owner with offers for its consideration.
Here, the Town Meeting voted to transfer the control and custody of the property to the Selectmen for the purpose of allowing the latter to transfer title to others upon terms and conditions the Selectmen decided upon in accordance with c. 30B, §16 the relevant statute.[3] The subsequent advertisement of the sale specified “the geographical area, terms and requirements of the proposed transaction [.including the Town’s reservation of a right to reject all bids], and the time and place for the submission of proposals” all as required by § 16(d).[4] The Selectmen thereafter rejected all bids in accordance with the power they had reserved. In so doing, they took the procedural steps required to carry out the Town Meeting’s mandate. The procedures the Town followed are the procedures the statute required.
ORDER
In light of the foregoing, it is hereby ORDERED that plaintiffs motion for summary judgment should be, and it hereby is, DENIED and that defendant’s motion for summary judgment should be, and it hereby is, ALLOWED. Judgment shall enter dismissing the complaint.

Thereafter, an article appeared on the warrant for the next Town Meeting to see if the Town would rescind and revoke the action it had taken to authorize the sale of the property this section involves. The record does not reflect what action the Town Meeting took on that article, perhaps because no action in fact had occurred by the time the summaiy-judgment motions were argued.

A conclusion that §9 is limited to personal property or services flows from the fact that the section allows the “procurement officer” to cancel the invitation to bid. The “procurement officer" is the person properly designated “to procure a supply or service” for a governmental body. G.L.c. 30B, §2. Under the statute, real property is neither a “supply” nor a “service." Id.

No one suggests that the Town Meeting was without power to delegate to the Selectmen the Town Meeting’s powers regarding disposition of Town-owned property.

Disposition of real property, unlike procurement of a contract for goods and services, does not require preparation of a separate request for proposals. Compare § 16(d) with §§5(b), 6(b).