REBECCA G. BOWEN, Respondent, *v.* PAUL A. HORGAN et al., Defendants; DINA K. POOLE, Respondent.

SAMUEL GOLDINGER et al., Appellants.

(Argued April 25, 1932; decided June 1, 1932.)

*Lewis Goldinger* and *Lloyd B. Kanter* for appellants. The assignee of the purchaser at a judicial sale succeeds to the title and all of the rights and liabilities of the purchaser. (*Archer* v. *Archer*, 155 N. Y. 415; *Hale* v. *Clauson*, 60 N. Y. 339; *Proctor* v. *Farnam*, 5 Paige, 614; 16 R. C. L. §§ 53, 81.) A defaulting purchaser at a judicial sale against whom an order of resale has been entered charging him with liability for a deficiency, is entitled to come in and to complete the terms of sale at any time before the actual resale. (*Robertson* v. *Skelton*, 13 Beav. 91; *Langevin* v. *Garon*, 2 Lower Can. Rep. 125; *Denison* v. *Denison*, 4 Ch. Chambers, 37.) The order for a resale did not effect a rescission of the purchaser's bid and the property is resold as the property of the purchaser. (*Andrews* v. *O'Mahoney*, 112 N. Y. 567; *Requa* v. *Rea*, 2 Paige, 339; *Hegeman* v. *Johnson*, 35 Barb. 200; *Virginia Fire & Marine Ins. Co.* v. *Cottrell*, 85 Va. 857; *Hurt* v. *Jones*, 75 Va. 341; *Matter of Ludwig*, 74 Pa. Super. Ct. 250; *Banes* v. *Gordon*, 9 Penn. 426; *Blakeley* v. *Hughes*, 140 Ky. 174.) There were no laches on the part of the purchaser or its assignees. (Pomeroy's Eq. Juris. [4th ed.] § 1442; *Mealey* v. *Page*, 41 Md. 172.)

*Fred L. Gross* for plaintiff-respondent. The assignees of the purchaser who defaulted in its purchase have no legal right to come in at any time suitable to themselves, and demand a deed of the property sold. (*Batchelar* v. *Batchelar*, 244 N. Y. 274; *Chase* v. *Joiner*, 88 Tenn. 761; *McComb* v. *Clyne*, 2 N. Y. Supp. 570; 5 N. Y. Supp. 64; 115 N. Y. 654.)

*James M. Brooks* and *Charles Halsted* for defendant-respondent. When it appears, owing to the delay of the

purchaser or its assignees, the situation of the parties or property has so changed, or there has been a change of circumstances or value as to make it inequitable to compel performance, the court will not compel and direct conveyance to the assignees. (*Merchants Bank* v. *Thomson*, 55 N. Y. 7; *Weston Realty Co.* v. *Kelley*, 143 App. Div. 488; *Kummer* v. *Kummer*, 112 Neb. 200; *Weber* v. *Wiley*, 111 Neb. 587; 63 A. L. R. 975.) An unreasonable delay on the part of the purchaser or its assignees to complete their bid will defeat their purchase. (*Jackson* v. *Edward*, 7 Paige, 386; 22 Wend. 498; *Batchelar* v. *Batchelar*, 244 N. Y. 275; *Arnett* v. *Anderson*, 12 Ky. 897; Knapp on Partition, p. 420.) Assignees of a purchaser take their right subject to equities against the assignor. (*Reeves* v. *Kimball*, 40 N. Y. 299; *Brunswick Cons. Co.* v. *Burden*, 116 App. Div. 468; *Epstein* v. *Gluckin*, 233 N. Y. 490.)

LEHMAN, J. The question here presented is, I think, not whether the court should order a rescission of the contract of sale, but rather whether the assignees of a purchaser who has for two years failed and refused to complete his purchase and has successfully resisted the efforts of the seller to compel performance of the contract of sale, may compel the seller to complete after, fortuitously, the value of the property has increased. A party to a contract can sue neither for breach of contract nor for specific performance without proof of performance or, at least, willingness to perform on his part, or of waiver of a default. Continued insistence by one party to a contract upon performance by the other party, even after default, may constitute a waiver of such default. Here the sellers of the property did insist upon performance even after default by the purchaser. So long as they insisted, they waived the default. Even on February 10th, 1931, when this court affirmed the order of Special Term compelling the purchaser to take title, the purchaser might have insisted upon its correlative right to

have the property conveyed to it. The purchaser, however, was unable or unwilling to complete its purchase, and then the sellers sought in effect to hold it in damages for its default. They still held title to the property. The judgment in partition required a judicial sale, and since the first sale had not been consummated, it was necessary to obtain an order for a resale, and it is said that because that order provided that, should the property sell for less than at the previous sale, the vendee should be required to pay the deficiency, an assignee of the vendee may insist even at this late date upon conveyance of title under the original sale to it. We assume that the original vendee may avoid liability for a deficiency by paying, before resale, the amount of its original bid with interest, costs and expenses, and thus acquire title to the property. Nevertheless, if a resale is held it would be the title of the owners and not the title of the original purchaser that would pass, for the original purchaser has no legal title to the property. It can hardly be doubted that the original purchaser could not compel a resale under that order, at least without tendering the original purchase price, interest, costs and expenses, if the sellers preferred not to proceed further under that order. The vendee's default has been final and complete. All that the vendors are seeking is to be reimbursed for their consequent loss, and in all fairness they should be permitted to abandon these efforts if they see fit. The assignees are, at least, in no better position than their assignor would be, and in one sense they are in a less good position, for by the assignment they assumed no obligation to take title to the property, and no obligation to pay any deficiency upon a resale. They are affected by the order of resale only to the extent that the order modifies or extinguishes the right of the purchaser upon the original sale. All that was assigned to them was a speculative chance that the property might before resale become so enhanced in value that a profit could be made by the purchaser in default through the long

delay which the purchaser had occasioned. Even the original purchaser could insist on a conveyance to it only so long as the seller asserted rights under the original sale or the order of resale. There would be, perhaps, basis for a claim by the original purchaser that unless the sellers abandoned insistence upon performance by it of any obligation under the original contract of sale, it must be permitted to perform that obligation; then equity might require that in spite of the purchaser's laches and default, the seller should be compelled to perform, or the order for a resale vacated and the purchaser's obligations terminated by legal decree. The assignees are entitled to no such relief, for they have assumed no obligation, and the purchaser is asking no such relief. In fact, however, the order of the Appellate Division would have the effect of terminating any rights which the sellers might have against the original purchaser for payment of a deficiency upon a resale, for that order is based upon a finding that the sellers are abandoning the resale.

I find nothing in the cases cited from other jurisdictions that is contrary to these views. I cannot find that *Robertson* v. *Skelton* (13 Beav. 91) is in point. From the incomplete statement of facts in the report, it appears that two " lots " had been sold at a judicial sale. One consisted of a reversionary interest subject to a life tenancy. The purchaser having failed to complete his purchase of these lots, the seller obtained an order of resale. When he discovered that one lot was worth more than the sum bid originally, he applied for an order withdrawing that particular lot from the resale, though otherwise insisting upon his rights under the order of resale. That the master of the rolls held could not be done without discharging the purchaser or permitting him to complete his purchase of the lot which the seller desired to withdraw. Here the sellers are asking no favor of the court, and are not seeking to enforce any rights under the order of resale. They maintain only

that they should not be compelled to proceed under that order when they prefer to abandon it.

The order should be affirmed, with costs.

KELLOGG, J. (dissenting). The Trachson Building Corporation, on May 9th, 1929, purchased the premises sought to be partitioned herein, and paid to the referee appointed to make the sale a sum equal to ten per cent of its bid. On June 10th, 1929, the day appointed for the closing, the corporation declined to complete its bid, on the ground that title to the premises was defective. On January 15th, 1930, the Supreme Court, at Special Term, made an order directing the purchaser to take title and pay the balance of its bid. On appeal, the order was affirmed by this court on the 10th of February, 1931. Thereafter, on the day fixed for closing by the Special Term, and upon all subsequent days to which the closing was adjourned, the purchaser failed to complete the sale. On the 31st day of March, 1931, on the application of the plaintiff, the Special Term directed a resale of the premises, providing in its order that the purchaser should be charged with any deficiency arising therefrom. This order was not appealed from and has never been vacated or modified. Thereafter the purchaser, Trachson Building Corporation, assigned its bid and all its rights thereunder to Samuel Goldinger and Philip Kanter. These assignees, asserting their willingness to make payment in accordance with the terms of sale, soon after made an application to the Supreme Court at Special Term for an order directing and requiring the referee to complete the sale. On the 14th day of July, 1931, the Special Term made an order denying the application. From an order of the Appellate Division affirming such order this appeal is taken.

The bid made by the Trachson Building Corporation at the referee's sale and its acceptance by the referee constituted a contract for the sale of real estate to which

the court was a party as vendor and the Trachson Corporation was a party as vendee. (*People* v. *New York B-L. Banking Co.*, 189 N. Y. 233.) The corporation became the equitable owner of the property; the court, or those for whom it acted, retained the legal title, but for no other purpose than to secure the payment of the bid. (*Matter of City of New York* [*Edgewater Road*], 138 App. Div. 203; 199 N. Y. 560.) The refusal of the corporation to complete its bid, and its long delay in tendering payment, might well have authorized the court to declare a rescission of the contract, in which event the rights of the corporation would have come to an end. This, however, was not the course pursued. On the contrary, an order was obtained for a resale, which expressly provided that, should the property sell for less than at the previous sale, the vendee, Trachson Corporation, should be required to pay the deficiency. Here was not rescission but enforcement; not abandonment of the contract but reliance thereupon. " In such case, the former sale is not set aside, but the land is resold as the land of the purchaser and at his risk." (*Hurt* v. *Jones*, 75 Va. 341.) Accordingly, if the premises bring more upon a resale than formerly, the vendee is entitled to the surplus. (*Virginia Fire & Marine Ins. Co.* v. *Cottrell*, 85 Va. 857; *Blakeley* v. *Hughes*, 140 Ky. 174.) Notwithstanding the long delays of the Trachson Corporation, when enforcement of its contract obligations was sought, necessarily recognition was given to its contract rights, for surely the contract could not be in force for one purpose and extinguished for some other purpose. Such rights as the Trachson Corporation had were transferred to these assignees, who, as the owners of an equitable estate, became entitled to enforce them as fully as their assignor would have been.

The case of *Robertson* v. *Skelton* (13 Beav. 91) is a case singularly in point. There Higinbotham purchased,

at a judicial sale, a reversionary interest subject to a life tenancy. He failed to complete, and a resale was ordered, the order providing that Higinbotham should be charged for the deficiency. Before the resale the life tenant died, and the property became worth far more than the sum bid at the sale. On application to the court it was held that the purchaser might complete his purchase. " The Master of the Rolls thought that the purchaser, not having been discharged, was still entitled to complete his purchase. He ordered, that on payment into court of the purchase-money within four days, and upon payment of all the costs of his default, Higinbotham should be allowed the purchaser."

The order should be reversed, with costs, and the motion for leave to complete the terms of sale should be granted.

POUND, Ch. J., HUBBS and CROUCH, JJ., concur with LEHMAN, J.; KELLOGG, J., dissents in opinion in which CRANE and O'BRIEN, JJ., concur.

Order affirmed.