**BERGSTROM AIR FORCE BASE FEDERAL CREDIT UNION, Appellant,**

v.

**MELLON MORTGAGE, INC.–EAST, Appellee.**

No. 12–83–0090–CV.

Court of Appeals of Texas, Tyler.

June 14, 1984.

Nancy O. Ricketts, J. Rowland Cook, Johnson & Swanson, Austin, for appellant.

Richard L. Crozier, Douglass D. Hearne, Douglass D. Hearne & Associates, Austin, for appellee.

McKAY, Justice.

Our opinion dated May 17, 1984, is withdrawn, and the following is substituted therefor.

This is an appeal from a judgment rendered upon a directed verdict in favor of appellee, Mellon Mortgage, Inc., and against appellant, Bergstrom Air Force Base Federal Credit Union in the amount of $472,881.15 plus attorneys' fees of $79,310.00, in a breach of contract suit for the sale of approximately two million dollars worth of Government National Mortgage Association (GNMA) bonds.

The record shows that on October 19, 1977, Bergstrom Air Force Base Federal Credit Union (Bergstrom) agreed to purchase approximately two million dollars worth of GNMA bonds from Jesup & Lamont. Jesup & Lamont paid Bergstrom the sum of $40,000.00 for the stand-by commitment. The stand-by commitment obligated Bergstrom to purchase GNMA mortgage-backed certificates in the amount of approximately two million dollars. Jesup & Lamont, in turn, entered into a stand-by commitment with Mellon Mortgage, Inc.-East (Mellon) to purchase the bonds on December 18, 1979, that it had contracted to sell to Bergstrom. The settlement date or date upon which the optional delivery was to be consummated between Bergstrom and Jesup & Lamont was originally stated to be either September 27, 1979, or October 16, 1979. The settlement date was changed by Jesup & Lamont to be on or about December 18, 1979, in order to conform with Jesup & Lamont's contract with Mellon. A written confirmation of the change in the settlement date was delivered to Bergstrom. Bergstrom's manager, Virginia Trussel, did not deliver its acceptance of the modification to Jesup & Lamont.

On February 23, 1978, Bergstrom received an audit letter from Jesup & Lamont which stated that "our files show" a settlement date of December 18, 1979. Jesup & Lamont requested that Bergstrom confirm the December 18, 1979, settlement date. At this time Bergstrom had a new manager who was unfamiliar with the contract between Bergstrom and Jesup & Lamont. The new manager, James Cannon, assumed that Bergstrom had agreed to modify the October 19, 1977, contract to provide for the change of the delivery date to December 18, 1979. Cannon signed and returned the letter to Jesup & Lamont confirming the change of the delivery date to December 18, 1979.

On November 7, 1979, Bergstrom was notified that the option to deliver the approximately two million dollars worth of GNMA securities was being exercised pursuant to Bergstrom's agreement with Jesup & Lamont. The notice specified that the securities would be delivered on December 19, 1979, because of the GNMA Dealers Association rule that the settlement date for all GNMA securities would be December 19, 1979. On December 10, 1979, Bergstrom filed a suit for declaratory judgment in the Federal District Court in Austin, Texas, seeking a declaration that Bergstrom was not bound to close the transaction. However, thereafter Bergstrom and Jesup & Lamont agreed to close the transaction, and the declaratory judgment suit was dismissed.

On December 20, 1979, Bergstrom funded the purchase of the GNMA securities by depositing the amount specified by Jesup & Lamont with the closing agent. On December 20, 1979, Mellon deposited the certificates with the closing agent. The closing agent refused to transfer the certificates because of an improper endorsement, and the amount deposited was insufficient by $1,000.00. The amount was insufficient because Mellon gave Bergstrom incorrect information concerning the amount. Mellon corrected the endorsement on December 26, 1979. However, before Mellon corrected the endorsement, Bergstrom withdrew its funds and thereafter refused to close the transaction despite Mellon's demands. On January 15, 1980, Bergstrom notified Mellon that it would not close the transaction. Jesup & Lamont assigned its

rights under the contract with Bergstrom to Mellon.

Mellon brought suit against Bergstrom for damages arising out of Bergstrom's breach of contract with Mellon's assignor, Jesup & Lamont, to purchase approximately two million dollars worth of GNMA securities. Mellon alleged that it had been damaged in the amount of $472,881.15.

After trial to a jury, the court withdrew the issue of liability from the jury and directed a verdict in favor of Mellon. The issue of reasonable attorneys' fees was submitted to the jury. The jury found that Mellon was entitled to the maximum amount of $79,310.00 in attorneys' fees.

The trial court rendered judgment in favor of Mellon in the amount of $472,881.15 plus attorneys' fees, interest and costs. Bergstrom appeals.

Appellant Bergstrom raises five points of error. Bergstrom's first two points of error contend that the trial court erred in granting Mellon's motion for instructed verdict because there was no valid modification of the October 1977 contract, and because there are controverted fact issues for the jury's determination in the record concerning the issue of whether or not there was a modification of the October 1977 contract to provide for a delivery date of December 18, 1979.

The October 1977 contract between the parties provides that the agreement shall be deemed to have been made in the State of New York and shall be construed, and the rights and liabilities of the parties determined, in accordance with the laws of the State of New York.

"[T]he general rule is that questions of substantive law are controlled by the laws of the state where the cause of action arose, but that matters of remedy and of procedure are governed by the laws of the state where the action is sought to be maintained." *State of California v. Copus*, 158 Tex. 198, 309 S.W.2d 227, 230 (1958), *cert. denied*, 356 U.S. 967, 78 S.Ct. 1006, 2 L.Ed.2d 1074 (1959). Therefore, in the case at bar, New York law controls matters of substantive law, and Texas law controls matters of procedural law. The question

of whether or not the trial court correctly granted the motion for instructed verdict is a procedural matter which is controlled by Texas law, and the question of whether or not there was a modification of the October 1977 contract is a substantive matter which is controlled by New York law.

The test to determine whether an instructed verdict can be supported is stated in the case of *Smith v. Guthrie*, 557 S.W.2d 163 (Tex.Civ.App.—Fort Worth 1977, writ ref'd n.r.e.), as follows:

When a case is withdrawn from the jury, the reviewing court must view the evidence in the light most favorable to the losing party.... However, the appellate court must affirm the trial court's withdrawal of the case from the jury, if the record establishes any ground which entitles the movant to judgment as a matter of law.

In order to determine if Mellon is entitled to judgment as a matter of law, the question of whether or not the contract was considered modified under New York law must be determined. Mellon asserts that the contract was modified as a matter of law because a New York statute, New York Uniform Commercial Code § 8–319, governs the question of modification of the contract. Uniform Commercial Code § 8–319 provides in pertinent part as follows:

Statute of Frauds

A contract for the sale of securities is not enforceable by way of action or defense unless

(a) there is some writing signed by the party against whom enforcement is sought or by his authorized agent or broker sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price; or

(c) within a reasonable time a writing in confirmation of the sale or purchase and sufficient against the sender under paragraph (a) has been received by the party against whom enforcement is sought and he has failed to send written objection to its contents within ten days after its receipt....

Mellon asserts that Uniform Commercial Code § 8–319 applies, and since Bergstrom received the written confirmation concerning the change in the delivery date, and Bergstrom did not object to its contents within ten days, then Bergstrom is bound by the terms of the modification.

The case of *Cohn, Ivers & Co. v. Gross*, 56 Misc.2d 491, 289 N.Y.S.2d 301, held that a call option, such as the one involved in the case at bar, does not fall within the definition of a "security," and Uniform Commercial Code § 8–319 is not applicable. The court noted that while a call option is a contract or a chose in action concerning a security, it is not the security itself.

Texas courts applying New York substantive law are bound by the New York court's interpretation of a New York statute; therefore, Uniform Commercial Code § 8–319 does not apply in this case. *Rumpf v. Rumpf*, 150 Tex. 475, 242 S.W.2d 416, 418 (1951); *Colson v. Thunderbird Bldg. Materials*, 589 S.W.2d 836, 839 (Tex. Civ.App.—Amarillo 1979, writ ref'd n.r.e.).

Since Uniform Commercial Code § 8–319 does not control the question of whether or not the contract was modified, the question at issue is controlled by general principles of law as provided for in Uniform Commercial Code § 1–103 as follows:

Supplementary General Principles of Law Applicable—

Unless displaced by the particular provisions of this title, the principles of law and equity, including the law ... relative to ... estoppel ... or other validating or invalidating cause shall supplement its provisions.

The October 1977 contract between Bergstrom and Jesup & Lamont contained the following provision: "No term or provision of this agreement may be waived or modified unless in writing and signed by each of the parties hereto. Time is of the essence."

■ Although the contract in question required a written modification, the requirement was waived by Bergstrom's attempt to close the transaction, and the principles of estoppel precluded the retraction of the waiver once there was a material

change of position in reliance upon the waiver. Continued insistence by one party to a contract upon performance by the other, even after default, may constitute a waiver of such default. *Bowen v. Horgan*, 259 N.Y. 267, 181 N.E. 567. 17 AM.JUR.2d *Contracts* § 447 (1964) provides as follows:

There is no doubt that a default in the performance of a contract may be waived.... The right to refuse to perform further or to accept further performance and to maintain immediately an action for damages because of a material or total breach may be waived, and the injured party may accept or insist on performance after such breach of the contract.... Any act by the injured party indicating an intent to continue will operate as a conclusive election, not depriving him of his right of action for the breach which has already taken place, but depriving him of any excuse for ceasing performance on his own part....

... Although intent is necessary to effect a waiver of a breach of contract, it need not be shown by direct evidence; but if it appears to exist so as to mislead the adversary, it works an estoppel. The waiver of a breach of contract may be shown by an act which is so inconsistent with an intent to enforce the right which arises upon the breach as reasonably to induce a belief that the right has been relinquished....

We hold that the contract was modified as a matter of law because Bergstrom waived its right to demand strict performance by proceeding to close the transaction, and Bergstrom caused Mellon to rely to its detriment on the fact that Bergstrom would close the transaction.

Bergstrom's action in dismissing the declaratory judgment suit and proceeding to close the transaction on December 20, 1979, by depositing the stipulated funds with the closing agent operated to estop Bergstrom from denying the existence of a valid modification of the contract to the detriment of Mellon. The principle of estoppel precludes Bergstrom from denying the existence of the modification of the contract because

Bergstrom waived its objection by tendering the funds and attempting to close the transaction. Mellon made a material change of position in reliance on the fact that Bergstrom waived any right that it might have to object that the modification of the contract did not conform with the Statute of Frauds.

Not only does the principle of estoppel preclude Bergstrom from denying the existence of a valid modification of the contract, but also, there is undisputed evidence in the record that Bergstrom consented to the modification of the October contract to postpone the settlement date to December 18, 1979. The evidence is undisputed that James Cannon, who was clothed with the authority to act on behalf of Bergstrom, signed and returned a written memorandum which modified the October 1977 contract. The memorandum was in writing and signed by the party sought to be charged. Bergstrom's first two points of error are overruled.

Bergstrom's third point of error contends that the trial court erred in finding that Mellon is entitled to recover from Bergstrom the amount of $79,310.00 in attorneys' fees.

■■■ There is no dispute between the parties that the award of attorneys' fees is a matter of substantive law which is governed by the law of the State of New York. New York law provides that attorneys' fees are not recoverable except when exclusively agreed to by contract or provided by statute. *Flaks, Zaslow & Co., Inc. v. Bank Computer Network Corporation,* 66 A.D.2d 363, 413 N.Y.S.2d 1. The contract made the basis of this suit provided that the aggrieved party under the contract is entitled to recover from the other party any and all losses caused the aggrieved party, including without limitation, reimbursement of expenses incurred by the aggrieved party.

The contract does not specifically mention attorneys' fees, legal expenses, or costs of litigation. Under New York law attorneys' fees cannot be awarded in the absence of an explicit contractual provision which provides for attorneys' fees. In

*Richcar Music Co. v. Towns,* 67 A.D.2d 888, 413 N.Y.S.2d 705, the court stated: "In the absence of an explicit contractual or statutory provision for the allowance thereof, attorneys' fees incurred in litigation are not compensable."

We hold that Mellon is not entitled to an award of attorneys' fees because there is no specific contractual provision which provides for attorneys' fees, and there is no New York statute which provides for attorneys' fees in this case. Bergstrom's third point of error is sustained.

Bergstrom's fourth point of error asserts that the trial court erred in ruling that Mellon recover damages from Bergstrom as of January 15, 1980, and the trial court further erred in granting postjudgment interest in the amount of nine per cent per annum.

■■■ Bergstrom contends that since the settlement date was supposed to be December 19, 1979, then the damages should be measured from December 19, 1979, instead of from January 15, 1980. The trial court established January 15, 1980, as the date to determine damages.

We hold that January 15, 1980, should be the date from which damages should be determined because the evidence shows that it was on that date that Bergstrom communicated to Mellon its refusal to close the transaction.

■■■ Bergstrom asserts that it should have been allowed an offset for payments on the bonds received by Mellon in the amount of $63,895.21.

We hold that Bergstrom is not entitled to the offset because Bergstrom failed to plead the affirmative defense of the offset; therefore, Bergstrom waived its right to the offset. *Brown v. American Transfer & Storage Co.,* 601 S.W.2d 931 (Tex.1980).

Bergstrom contends that according to the law of the State of New York, postjudgment interest shall be at the rate of six per cent per annum. Bergstrom asserts that the issue of damages is substantive in nature; therefore, it is controlled by the law of the State of New York.

Judgment interest rates are a matter of substantive law; therefore, the law of the State of New York controls. *Bott v. American Hydrocarbon Corporation*, 458 F.2d 229, 231 (5th Cir.1972); *Corrosion Rectifying Company v. Freeport Sulphur Co.*, 197 F.Supp. 291, 293 (S.D.Tex.1961).

At the time of the judgment, New York law specified that the interest rate on judgments was six per cent per annum. New York Civil Practice Law and Rules § 5004 (McKinney 1963 & Supp.1980).

We hold that Mellon is entitled to postjudgment interest at the rate of six per cent per annum. Bergstrom's fourth point of error is overruled with regard to the date from which damages should be determined, and Bergstrom's fourth point of error is sustained with regard to fixing postjudgment interest at the rate of six per cent per annum.

Bergstrom's fifth point of error asserts that the trial court erred in sustaining certain objections of Mellon and excluding certain evidence offered by Bergstrom.

In considering the question of excluded evidence when the court instructed the verdict, the court stated in *Mellette v. Hudstan Oil Corp.*, 243 S.W.2d 438, 446 (Tex. Civ.App.—El Paso 1951, writ ref'd n.r.e.):

> ... It is elementary that the propriety of a court instructing a verdict in favor of a party must depend on the evidence introduce [sic] before the jury. The action can not be assailed on the ground that the party could have offered testimony entitling him to have his alleged cause of action submitted to the jury. Rejected testimony can not be considered in passing on this issue....

Even if the excluded testimony had been admissible, it is our view that it would not have changed the fact that there was a valid modification of the contract between Bergstrom and Jesup & Lamont based on the theory of estoppel. Bergstrom's fifth point of error is overruled.

The judgment of the trial court is reformed so as not to allow the recovery of attorneys' fees by Mellon in the amount of $79,310.00 as recited in the judgment, and the judgment is reformed to change the rate of postjudgment interest from nine per cent (9%) per annum as recited in the judgment to the rate of six per cent (6%) per annum.

The judgment, as reformed, is affirmed.