Theresa Marshanette VOTZMEYER,
Appellant,

v.

Charles Albert VOTZMEYER,
Jr., Appellee.

No. 13–96–265–CV.

Court of Appeals of Texas,
Corpus Christi.

Feb. 5, 1998.

Jerry N. Dennard, San Antonio, for Appellant.

Kim Cox, Cox & Robinson, Corpus Christi, Ann E. Coover, Coover & Coover, Corpus Christi, for Appellee.

Before DORSEY, FEDERICO G. HINOJOSA, Jr. and RODRIGUEZ, JJ.

## OPINION

FEDERICO G. HINOJOSA, Jr., Justice.

Appellant, Theresa Marshanette Votzmeyer ("Theresa"), and appellee, Charles Albert Votzmeyer, Jr. ("Charles"), divorced in 1985. Theresa was granted an equitable interest in $175,000 worth of community property which Charles was ordered to turn over in regular installments. A few months later, Charles filed for bankruptcy and unsuccessfully endeavored to have his obligations under the divorce decree discharged. Although Theresa and Charles made a private agreement modifying Charles' obligations to Theresa, Charles retained exclusive possession of all the property, delivering nothing to Theresa until he was briefly incarcerated in 1989, as a sanction for his willful failure to comply with the terms of the divorce decree. Thereafter, the court suspended Charles' commitment on condition that he make up his overdue obligations and completely deliver to Theresa her share of the marital estate. Charles complied until mid–1995. Theresa, determining that Charles had not fully performed as decreed, asked the court to revoke the order suspending commitment and to compel Charles to produce certain documents which she had requested. Charles then sought clarification of his obligations and declaratory relief, claiming he had turned over all that was due to Theresa. The trial court granted Charles' motions and denied Theresa's motions. By four points of error, Theresa complains that the trial court erred (1) in modifying the property division ordered by the court in the final divorce decree, (2) in granting a declaratory judgment for Charles, (3) in denying her motion for discovery, and (4) in denying her motion to revoke the order suspending commitment. We affirm in part and reverse and remand in part.

On May 30, 1985, the trial court signed a final decree of divorce, ending Theresa and Charles' marriage. In dividing the parties' property, the trial court stated:

> "It is further ORDERED, ADJUDGED AND DECREED by the Court, having found and considered "alimony factors" accruing in favor of [Theresa], such as the disparity of earning power of the parties, as well as their business opportunities, the physical condition of the parties, probable future need for support and educational background, that in lieu of all other interest in the community estate, [Theresa] is entitled to receive from [Charles] and [Charles] is ordered to pay to [Theresa] the sum of One Hundred and Seventy Five Thousand and No/100 ($175,000) Dollars, bearing interest at the rate of 6% per annum and payable at the rate of $3,000 per month, beginning on the 1st day of

June, 1985 and a like payment shall be due and payable on the same day of each succeeding month thereafter until said $175,000 with interest has been fully paid.... It is further the finding of the Court that said $175,000 obligation hereinbefore ordered is expressly referable to [Theresa's share of the community property]."

Theresa's interest in the $175,000 was secured by an equitable lien on the property awarded to Charles. Because a tax debt on community income for 1982 and 1985 was outstanding, Charles was granted an offset of one-half of all taxes, penalties, and interest paid by him against the $175,000 obligation if he paid the taxes, penalties, and interest to the Internal Revenue Service (IRS) in full and presented proof of such payment to Theresa.

Charles made payments to Theresa totaling $27,750. In October 1985, he filed for bankruptcy and attempted to discharge the remainder of the obligation. Theresa moved to block the discharge. On February 29, 1988, Theresa and Charles stipulated in the bankruptcy case that the payments were "for purposes of this cause" agreed to be "in the nature of alimony." They also agreed that the outstanding balance on the obligation was $147,250 and that the payments should be reduced from $3,000 to $1,500 for 98 months, with one final payment of $250. The first payment was due on March 1, 1988, and it was expressly agreed that the offset provision for any payments made on the back taxes still applied. No interest rate was mentioned. After reviewing the stipulated facts, the bankruptcy court found the payments due Theresa were "in the nature of alimony," *i.e.*, for her support, and as such were nondischargeable in bankruptcy. 11 U.S.C. § 523(a)(5) (1986). After the bankruptcy court's judgment in March 1988, Charles did not make any payments to Theresa.

In 1988, Theresa filed a motion for contempt with the divorce court. After a hearing on September 6, 1988, the trial court found:

... that [Charles] was ordered to pay to [Theresa] $175,000, bearing interest at the rate of 6% per annum and payable at the rate of $3,000 per month, beginning on the 1st day of June, 1985, and a like payment to be due and payable on the same day of each succeeding month thereafter until said $175,000 with interest has been fully paid. Further, the Court finds that the aforementioned $175,000 obligation was expressly referable to the property of the parties which was owned by the parties and in the possession of [Charles] at the date of the entry of the Decree of Divorce and that said property was apportioned by the Court and that the $175,000 sum awarded to [Theresa] was a part of the settlement of the marital estate to her in the divorce and that it was expressly the holding of the Court that with respect to the $175,000 obligation [Charles] was designated a constructive trustee for [Theresa] in holding the community assets particularly insofar as the $175,000 share was concerned that was awarded to [Theresa].

The court found that Charles had failed to make the ordered payments from February 1, 1986 through September 1, 1988, and that he was in arrears in the amount of $81,000. The court found Charles in contempt and ordered that he be committed to the county jail for six months. A writ of commitment was issued on March 17, 1989, and Charles was taken into custody on April 3, 1989.

A Motion to Suspend Commitment was subsequently filed by Charles and joined by Theresa.[1] The court heard the joint motion on April 10, 1989, and signed an Order Suspending Enforcement of Contempt Order on April 11, 1989.[2] The contempt order was suspended on the following terms and conditions:

(1) That [Charles] pay to [Theresa] the sum of $3,000.00 in cash, the receipt of which is acknowledged by [Theresa].

(2) That [Charles] reduce the $78,000 arrearage ... by paying to [Theresa] the sum of $1,500 per month, beginning on the 20th day of May, 1989, and [con-

1. This motion is not included in the record before us.

2. We hereafter refer to this order as the "Order of Suspension."

tinuing with such monthly payments] until the remaining arrearage of $78,-000 has been fully paid.

(3) [address at which payments were to be delivered to Theresa]

(4) All other payments required pursuant to the Decree of Divorce are suspended until the entire arrearage of $81,000 is paid as provided herein at which time any balance then remaining for the obligation pursuant to the Decree of Divorce shall be paid at the rate of $1,500 per month until paid in full.

Charles made monthly payments totaling $114,000, before ceasing payments in August 1995. Theresa then demanded that he continue paying because, according to her calculations, he had not met his obligation. In October 1995, Theresa filed a motion to revoke the Order of Suspension. In November 1995, she filed a motion to compel discovery.

In October 1995, Charles filed a motion for clarification and for declaratory relief. Charles asked the divorce court: (1) to consider the stipulated agreement, and its acceptance by the bankruptcy court, to be a modification of the divorce decree, (2) to allow him credit for payments on the marital tax debt, and (3) to find that he had fully paid the obligation set out in the divorce decree. Moreover, Charles claimed that he had overpaid his obligation by nearly $15,000 and requested reimbursement for that sum.

On March 14, 1996, the trial court heard the parties' motions. After hearing all the evidence and examining all the exhibits, the court denied Theresa's motion to revoke the Order of Suspension and motion to compel discovery. The court granted Charles' motion for clarification and for declaratory relief.

Although Charles had requested modification, not clarification, of the divorce decree to comport with the terms of the stipulated facts made in conjunction with his bankruptcy filing, the trial court decided that the Order of Suspension needed clarification.

The court made and filed Findings of Fact and Conclusions of Law. Finding number nine states:

9. Pursuant to Judge Margarito Garza's order of April 1, 1989,[3] no interest accrued on the $147,250.00 balance due until $81,000 was paid on such unpaid balance. Credits for tax payments for the years 1982 and 1985 are allowed on the balance as paid. After $81,000.00 had been paid, interest at the rate of six percent (6%) per annum from October 21, 1992 until paid.

Additional findings determine (1) the outstanding balance as of the date of the prior order to be $147,250, (2) Charles was due credit for settling the marital tax debts, and (3) Charles overpaid Theresa by $1,305.30.

Charles initially argues that the bankruptcy court's finding—that the payments due Theresa were "in the nature of alimony"—changed the payments into alimony. Because the bankruptcy code[4] provides that payments functioning to support or maintain the recipient may be based on a property settlement agreement or other order of a court of record, we conclude the bankruptcy court's finding did not transmute the payments from Theresa's share of the parties' property into alimony.

■ By her first point of error, Theresa contends the trial court erred by entering an order clarifying a prior order of the court. Specifically, she complains that tolling the accrual of interest produces a substantive change in the original division of the community property. Theresa also challenges the sufficiency of the evidence to support the trial court's Finding number nine, because, she argues, the Order of Suspension did not suspend the accrual of interest on the outstanding balance.

Charles relies on the stipulation of facts which the parties submitted to the bankruptcy court as proof that Theresa agreed to waive the accrual of interest on the debt.

---

**3.** The record does not contain an order dated April 1, 1989. However, evidence establishes that the Order Suspending Enforcement of Contempt Order, dated April 11, 1989, is the order referred to here.

**4.** 11 U.S.C. § 523(a)(5) (1986).

■ The bankruptcy court stipulation was an agreement which modified the terms of the divorce decree. The payment plan outlined in the stipulated facts appears to waive interest because ninety-eight monthly payments of $1,500, plus one payment of $250, equals the outstanding balance of $147,250. However, Charles promptly breached the agreement he made in the bankruptcy court by failing to make any payments to Theresa. Moreover, he refused to make any payments until the divorce court found him in contempt and issued a commitment order. Only then did Charles commence making payments in accordance with the divorce court's decree.

■ We hold that Charles cannot now seek to enforce the favorable provisions of the bankruptcy court agreement, after refusing to perform in accordance with the terms he found distasteful. *Atlantic Richfield Co. v. Long Trusts,* 860 S.W.2d 439, 447 (Tex. App.—Texarkana 1993), *aff'd,* 893 S.W.2d 686 (Tex.App—Texarkana 1995); *Joseph v. PPG Indus., Inc.,* 674 S.W.2d 862, 867 (Tex.App.— Austin 1984, writ ref'd n.r.e.). As the non-breaching party, Theresa is within her rights to choose to enforce the original judgment rather than seek enforcement of the later agreement. *Alexander v. Handley,* 136 Tex. 110, 146 S.W.2d 740, 743 (1941); *Shaw v. Kennedy,* 879 S.W.2d 240, 247 (Tex.App.— Amarillo 1994, no writ); *Browning v. Holloway,* 620 S.W.2d 611, 616–17 (Tex.Civ.App.— Dallas), *writ ref'd per curiam,* 626 S.W.2d 485 (Tex.1981).

We note that the bankruptcy stipulation was not mentioned in the Order of Suspension, the clarification order, or the trial court's findings of fact and conclusions of law. We conclude that Charles's argument for enforcement on that basis was rejected by the trial court.

Theresa contends that the trial court had no authority to issue a clarifying order because the court signed the divorce decree

nearly fifteen years ago and the Order of Suspension nearly eight years ago.

■ A trial court may issue a clarification order when the terms for the division of property in a divorce decree are ambiguous or not specific enough to be enforceable by contempt, TEX.FAM.CODE ANN. § 3.72(b) (Vernon 1993),[5] or to clarify its own prior order enforcing the original property division. TEX.FAM.CODE ANN. § 3.71(a) (Vernon 1993).[6] A clarification order may be issued *sua sponte* or on motion of any party. TEX.FAM. CODE ANN. § 3.72(a) (Vernon 1993). However, a trial court may not modify a property division; its enforcement orders are limited to clarification of the decree and may only specify more precisely the manner of effecting its terms. TEX.FAM.CODE ANN. § 3.71(a) (Vernon 1993); *Beach v. Beach,* 912 S.W.2d 345, 348 (Tex.App.—Houston [14th Dist.] 1995, no writ). An enforcement order that modifies a property division is beyond the power of the court to enter and is unenforceable. TEX.FAM.CODE ANN. § 3.71(b) (Vernon 1993); *Beach,* 912 S.W.2d at 348.

Because it refers to "Judge Margarito Garza's order of April 1, 1989," the Clarification Order clearly applies to the Order of Suspension. The trial court found that the language of the prior order contained an ambiguity. After ordering Charles to make payments of $1,500 per month on the arrearage of $78,000, the Order of Suspension ordered that:

> All other payments required pursuant to the Decree of Divorce are suspended until the entire arrearage of $81,000 is paid as provided for herein at which time any balance then remaining for the obligation pursuant to the Decree of Divorce shall be paid at the rate of $1,500.00 per month until paid in full.

The trial court apparently found the phrase "all other payments" to be ambiguous.

**5.** All of the family code provisions cited herein were repealed by Act of April 17, 1997, 75th Leg., R.S., ch. 7, § 3, 1997 Tex.Sess.Law Serv. 43 (Vernon). The current version of former section 3.72 can be found at Act of April 17, 1997, 75th Leg., R.S., ch. 7, § 1, 1997 Tex.Sess.Law Serv. 38 (Vernon). The former family code provisions are still applicable to this case as it was pending at the time of repeal. *See id.* § 4.

**6.** The current version of former section 3.71 can be found at Act of April 17, 1997, 75th Leg., R.S., ch. 7, § 1, 1997 Tex.Sess.Law Serv. 38 (Vernon).

The divorce decree awarded Theresa $175,000, bearing interest at 6% per annum and payable at the rate of $3,000 per month, as her share of the parties' community property. Because of the interest bearing provision, the $3,000 has two components: principal and interest. The ambiguity arises in the phrase "all other payments" because it is unclear whether the court intended "payments" to mean (1) the series of monthly $3,000 payments or (2) the monthly interest and principal payments which together equal $3,000 per month.

After reviewing Texas case law, we find that principal and interest can be regarded as separable payments though related to the same obligation. *See, e.g., Cotton States Bldg. Co. v. Jones,* 94 Tex. 497, 62 S.W. 741, 742 (1901); *Public Util. Comm'n of Tex. v. Pedernales Elec. Coop., Inc.,* 678 S.W.2d 214, 224 (Tex.App.—Austin 1984, writ ref'd n.r.e.); *Cox v. Medical Ctr. Nat'l Bank,* 424 S.W.2d 954, 957 (Tex.Civ.App.—Houston [14th Dist.] 1968, no writ). Considering that Charles had recently been involved in bankruptcy proceedings, it is reasonable to interpret the suspension of "all other payments" as a grant of forbearance on the payments contemporaneously falling due under the terms of the divorce decree. In other words, had "all other payments" not been suspended, Charles would have been obliged to pay $3,000 per month ($1,500 towards the arrears and $1,500 for his current installment). Relieving the obligor of the double burden of making concurrent payments on arrears and payments falling due by suspending or postponing the currently due payments is not a substantive change in the property division as the obligee remains entitled to the full amount owed plus interest; only the time for payment is extended.

The Order of Suspension is silent as to interest. The trial court decided that besides suspending payments towards interest, the Order of Suspension tolled the accrual of interest on the outstanding balance. We do not agree.

A "payment" is a delivery of money by the person from whom it is due to the person to whom it is owed. BLACK'S LAW DICTIONARY 1129 (6th ed. 1990). "Suspension" means a temporary interruption or cessation, *id.* at 1447, so a suspension of payments is a temporary cessation of the delivery of money owed. "Accrual," on the other hand, refers to an earned increase (interest) on monies owed that is not yet received or receivable as a payment. *Id.* at 21. Temporarily postponing *delivery* of interest payments does not stop the debt from increasing during the forbearance.

Where a divorce decree is unambiguous, the court has no authority to enter an order altering or modifying the original disposition of property. TEX.FAM.CODE ANN. § 3.71 (Vernon 1993); *Echols v. Echols,* 900 S.W.2d 160, 162 (Tex.App.—Beaumont 1995, writ denied); *Pearcy v. Pearcy,* 884 S.W.2d 512, 514 (Tex.App.—San Antonio 1994, no writ); *Pierce v. Pierce,* 850 S.W.2d 675, 679 (Tex.App.—El Paso 1993, writ denied). The 6% interest rate attached to the adjudicated property division is not an arbitrary figure, but founded in statutory law.[7] *See* TEX.FIN. CODE ANN. § 302.002 (Vernon 1998). As judgment interest rates are a matter of substantive law, *Minnesota Min. & Mfg. Co. v. Nishika Ltd.,* 885 S.W.2d 603, 633 (Tex. App.—Beaumont 1994), *rev'd on other grounds,* 953 S.W.2d 733 (Tex.1997); *Bergstrom A.F.B. Fed. Credit v. Mellon Mortg.,* 674 S.W.2d 845, 851 (Tex.App.—Tyler 1984, writ ref'd n.r.e.), it is logically a substantive term of the property division in the divorce decree. The basic function of interest is to protect the time value of the sum awarded from the eroding impact of inflation on its relative purchasing power, and offset the loss in value to a party who does not take the property awarded at the time of the award.

The effect of the court's finding that interest did not accrue is to relieve Charles of part of his obligation and to cancel a portion of the value of the property due Theresa.

---

7. The codification of former TEX.REV.CIV.STAT.ANN. art. 5609–1.03 resulted in no substantial changes. Although the statute is expressly applicable to agreed property divisions, it is inequitable to argue that while interest may accrue under a contractual settlement, it should not be allowed to accrue as a result of an adjudicated settlement.

We find no case law or statutory authority permitting a court to toll the accrual of interest while payments are suspended, nor is there a valid agreement between Theresa and Charles waiving interest. This, by definition, is a substantive modification. *See* BLACK'S LAW DICTIONARY 1004 (6th ed. 1993).

Substantive modifications in the property division contained in a final decree of divorce are beyond the power of the divorce court to enter and enforce. TEX.FAM.CODE ANN. § 3.71(b) (Vernon 1993). Accordingly, we sustain appellant's first point of error.

By her second point of error, Theresa contends the trial court erred in granting Charles' motion for declaratory judgment. Charles argues that the trial court did not grant him a declaratory judgment.

The trial court clearly granted Charles declaratory relief because it found that he had satisfied the obligation and even over-

paid it. Having found that the trial court erred in modifying the property division, it is necessary to re-examine the obligation imposed by the divorce decree to determine if any balance remains due.

The Order of Suspension does not state the outstanding balance as of April 11, 1989. However, a careful reading of the record reveals that the balance, as of that date, was $147,250. We will begin with that figure. Charles paid $3,000 in cash on that day, leaving a balance of $144,250 with interest accruing at 6% per annum. In addition, the divorce decree allowed Charles an offset of one-half of all taxes, penalties, and interest paid by him for back taxes owed on marital income. The trial court found that Charles made the following payments to Theresa and the IRS on behalf of Theresa.[8] After calculating interest on the unpaid balance at the rate of 6% per annum, we find the following:

| Date | Balance Brought Forward | Interest | Payments Made to Theresa | Payments Made to The IRS | Balance |
|------|-------------------------|----------|--------------------------|--------------------------|---------|
| **1989** | | | | | |
| Apr | 147,250.00 | | 3,000.00 | 4,294.62 | 139,955.38 |
| May | 139,955.38 | 699.78 | 1,500.00 | 127.00 | 139,028.16 |
| Jun | 139,028.16 | 695.14 | 1,500.00 | 127.00 | 138,096.30 |
| Jul | 138,096.30 | 690.48 | 1,500.00 | 127.00 | 137,159.78 |
| Aug | 137,159.78 | 685.80 | 1,500.00 | 127.00 | 136,218.58 |
| Sep | 136,218.58 | 681.09 | 1,500.00 | 127.00 | 135,272.67 |
| Oct | 135,272.67 | 676.36 | 1,500.00 | 127.00 | 134,322.03 |
| Nov | 134,322.03 | 671.61 | 1.500.00 | 127.00 | 133,366.64 |
| Dec | 133,366.64 | 666.83 | 1,500.00 | 127.00 | 132,406.47 |
| **1990** | | | | | |
| Jan | 132,406.47 | 662.03 | 1,500.00 | 127.00 | 131,441.50 |
| Feb | 131,441.50 | 657.21 | 1,500.00 | 127.00 | 130,471.71 |
| Mar | 130,471.71 | 652.36 | 1,500.00 | 127.00 | 129,497.07 |
| Apr | 129,497.07 | 647.48 | 1,500.00 | 147.50 | 128,497.05 |
| May | 128,497.05 | 642.48 | 1,500.00 | 127.00 | 127,512.53 |
| Jun | 127,512.53 | 637.56 | 1,500.00 | | 126,650.09 |
| Jul | 126,650.09 | 633.25 | 1,500.00 | | 125,783.34 |
| Aug | 125,783.34 | 628.92 | 1,500.00 | | 124,912.26 |
| Sep | 124,912.26 | 624.56 | 1,500.00 | 127.00 | 123,909.82 |
| Oct | 123,909.82 | 619.55 | 1,500.00 | 127.00 | 122,902.37 |
| Nov | 122,902.37 | 614.51 | 1,500.00 | 127.00 | 121,889.88 |
| Dec | 121,889.88 | 609.45 | 1,500.00 | 127.00 | 120,872.33 |
| **1991** | | | | | |
| Jan | 120,872.33 | 604.36 | 1,500.00 | 500.00 | 119,476.69 |
| Feb | 119,476.69 | 597.38 | 1,500.00 | | 118,574.07 |

8. One-half of the payments made to the IRS for back taxes owed by the parties on marital income.

| | | | | | |
|---|---|---|---|---|---|
| Mar | 118,574.07 | 592.87 | 1,500.00 | 386.16 | 117,280.78 |
| Apr | 117,280.78 | 586.40 | 1,500.00 | 910.50 | 115,456.68 |
| May | 115,456.68 | 577.28 | 1,500.00 | 500.00 | 114,033.96 |
| Jun | 114,033.96 | 570.17 | 1,500.00 | 500.00 | 112,604.13 |
| Jul | 112,604.13 | 563.02 | 1,500.00 | 1,062.50 | 110,604.65 |
| Aug | 110,604.65 | 553.02 | 1,500.00 | 416.67 | 109,241.00 |
| Sep | 109,241.00 | 546.20 | 1,500.00 | 416.67 | 107,870.53 |
| Oct | 107,870.53 | 539.35 | 1,500.00 | 208.33 | 106,701.55 |
| Nov | 106,701.55 | 533.51 | 1,500.00 | 208.33 | 105,526.73 |
| Dec | 105,526.73 | 527.63 | 1,500.00 | 208.33 | 104,346.03 |
| **1992** | | | | | |
| Jan | 104,346.03 | 521.73 | 1,500.00 | 208.33 | 103,159.43 |
| Feb | 103,159.43 | 515.80 | 1,500.00 | 208.33 | 101,966.90 |
| Mar | 101,966.90 | 509.83 | 1,500.00 | 208.33 | 100,768.40 |
| Apr | 100,768.40 | 503.84 | 1,500.00 | 208.33 | 99,563.91 |
| May | 99,563.91 | 497.82 | 1,500.00 | 312.50 | 98,249.23 |
| Jun | 98,249.23 | 491.25 | 1,500.00 | 312.50 | 96,927.98 |
| Jul | 96,927.98 | 484.64 | 1,500.00 | 312.50 | 95,600.12 |
| Aug | 95,600.12 | 478.00 | 1,500.00 | 750.00 | 93,828.12 |
| Sep | 93,828.12 | 469.14 | 1,500.00 | 500.00 | 92,297.26 |
| Oct | 92,297.26 | 461.49 | 1,500.00 | 500.00 | 90,758.75 |
| Nov | 90,758.75 | 453.79 | 1,500.00 | | 89,712.54 |
| Dec | 89,712.54 | 448.56 | 1,500.00 | 1,000.00 | 87,661.10 |
| **1993** | | | | | |
| Jan | 87,661.10 | 438.31 | 1,500.00 | | 86,599.41 |
| Feb | 86,599.41 | 433.00 | 1,500.00 | 1,000.00 | 84,532.41 |
| Mar | 84,532.41 | 422.66 | 1,500.00 | 500.00 | 82,955.07 |
| Apr | 82,955.07 | 414.77 | 1,500.00 | 1,363.00 | 80,506.84 |
| May | 80,506.84 | 402.53 | 1,500.00 | 500.00 | 78,909.37 |
| Jun | 78,909.37 | 394.55 | 1,500.00 | | 77,803.92 |
| Jul | 77,803.92 | 389.02 | 1,500.00 | 500.00 | 76,192.94 |
| Aug | 76,192.94 | 380.96 | 1,500.00 | | 75,073.90 |
| Sep | 75,073.90 | 375.37 | 1,500.00 | 208.33 | 73,740.94 |
| Oct | 73,740.94 | 368.70 | 1,500.00 | 500.00 | 72,109.64 |
| Nov | 72,109.64 | 360.55 | 1,500.00 | 1,139.04 | 69,831.15 |
| Dec | 69,831.15 | 349.16 | 1,500.00 | | 68,680.31 |
| **1994** | | | | | |
| Jan | 68,680.31 | 343.40 | 1,500.00 | | 67,523.71 |
| Feb | 67,523.71 | 337.62 | 1,500.00 | | 66,361.33 |
| Mar | 66,361.33 | 331.81 | 1,500.00 | 500.00 | 64,693.14 |
| Apr | 64,693.14 | 323.46 | 1,500.00 | 500.00 | 63,016.60 |
| May | 63,016.60 | 315.08 | 1,500.00 | | 61,831.68 |
| Jun | 61,831.68 | 309.16 | 1,500.00 | | 60,640.84 |
| Jul | 60,640.84 | 303.20 | 1,500.00 | | 60,944.04 |
| Aug | 60,944.04 | 304.72 | 1,500.00 | 2,500.00 | 57,248.76 |
| Sep | 57,248.76 | 286.24 | 1,500.00 | 500.00 | 55,535.00 |
| Oct | 55,535.00 | 277.67 | 1,500.00 | 500.00 | 53,812.67 |
| Nov | 53,812.67 | 269.06 | 1,500.00 | 500.00 | 52,081.73 |
| Dec | 52,081.73 | 260.41 | 1,500.00 | 500.00 | 50,342.14 |
| **1995** | | | | | |
| Jan | 50,342.14 | 251.71 | 1,500.00 | 500.00 | 48,593.85 |
| Feb | 48,593.85 | 242.97 | 1,500.00 | 4,832.50 | 42,504.32 |
| Mar | 42,504.32 | 212.52 | 1,500.00 | 1,500.00 | 39,716.84 |
| Apr | 39,716.84 | 198.58 | 1,500.00 | | 38,415.42 |
| May | 38,415.42 | 192.08 | 1,500.00 | 3,000.00 | 34,107.50 |
| Jun | 34,107.50 | 170.54 | 1,500.00 | 2,500.00 | 31,778.04 |
| Jul | 31,778.04 | 158.89 | 3,000.00 | | 28,936.93 |
| Aug | 28,936.93 | 144.68 | 1,000.00 | | 28,081.61 |

We conclude that, as of August 1995, Charles owed Theresa $28,081.61. Accordingly, we hold it was improper for the trial court to grant a declaratory judgment that Charles had satisfied his obligation to Theresa. We sustain appellant's second point of error.

■ By her third point of error, Theresa contends the trial court erred in refusing to order Charles to produce certain requested documents. Theresa served four requests for production on Charles. After Charles objected to all four requests, Theresa filed a motion to compel discovery. The trial court heard and denied the motion. We will consider each request separately.

Theresa's first request for production asked Charles to produce copies of all federal income tax returns in her name and Charles' name, including amendments thereto, for the years 1980 through 1994. Charles objected to the request on the grounds that the request was harassing and unduly burdensome, that the information sought was irrelevant and immaterial to the issue in the instant case, some documents were not in his possession, and the information in existence and not covered by the objections would be produced at the offices of Charles's attorney.

At the hearing, Theresa conceded that the returns for 1980 through 1985 were joint returns and that she could have, but did not request copies from the IRS. No satisfactory reason for the failure was offered. After the hearing, Theresa requested the documents directly from the IRS and then learned that her name had been removed from the records, thus making them accessible only to Charles.

With a small effort Theresa could have learned before the hearing that she could not personally obtain the desired documents. Although Theresa argued to the trial court that it would take "months" to obtain the tax returns from the IRS, she presents us with letters from the IRS (responding to her correspondence of April 16, 1996) which were filed with the trial court on May 23, 1996.[9]

Furthermore, Theresa failed to explain just what she expected to learn from tax returns Charles filed after the divorce. She presented no evidence of relevance to the trial court. We cannot say the trial court erred in refusing to compel Charles to produce these documents.

Theresa's second request for production asked Charles to produce copies of all taxpayer installment agreements executed by Charles from 1980 through 1994. Charles responded that an IRS Form 433–D installment agreement had already been provided to Theresa. Although the installment agreement was discussed at the hearing, we find no such document in the record. Because it is impossible to determine what information was contained in the document, we cannot say the trial court erred in refusing to compel Charles to produce additional documents.

Theresa's third request for production asked Charles to produce copies of all filings in the U.S. District Court and/or U.S. Tax Court and other memoranda concerning the taxable character of the payments made by Charles to Theresa. Charles objected to this request as cumbersome, harassing, and irrelevant to the instant case. Furthermore, he argued that any such filings were public records and could be obtained directly by Theresa. Theresa presented no argument in response to Charles' objections. We cannot say the trail court erred in refusing to compel Charles to produce these documents.

Theresa's fourth request for production asked Charles to produce copies of all correspondence that Charles, his agents and attorneys had with the IRS. Charles objected to this request on the grounds that it was unduly burdensome, harassing, irrelevant, and in violation of the attorney-client privilege. Theresa claimed that the correspondence was not privileged because it concerned a separate dispute with the IRS. Theresa contended that the correspondence was necessary to

9. The form letters from the IRS note that Theresa's query was dated April 16, 1996, but the replies are not themselves dated.

determine whether Charles was attempting to offset his obligation by any amount connected with the unrelated case. She did not explain how this would be revealed by the correspondence requested or why the attorney-client privilege should be waived in light of it. We cannot say the trial court erred in refusing to compel Charles to produce these documents. Accordingly, we overrule appellant's third point of error.

By her fourth point of error, Theresa contends the trial court erred in denying her motion to revoke the Order of Suspension. The court refused to grant Theresa's motion to revoke the Order of Suspension because it was "based on an order incapable of enforcement, was unclear, or was not specific."

The divorce decree provides that Theresa was to receive $175,000 from Charles as fair compensation for her share of the parties' community property. Her interest was secured by an equitable lien on the property. The effect of the decree was to make Charles a constructive trustee for Theresa of property valued at $175,000 for which he was to pay Theresa the equivalent cash value. *See Ex parte Preston*, 162 Tex. 379, 347 S.W.2d 938, 940 (1961).[10] Rather than convert some of the assets he held on Theresa's behalf into cash and deliver funds to her or, alternatively, deliver up the property, Charles attempted to retain all of the property, first by declaring bankruptcy, and later by simply withholding it from Theresa until he was forced to resume delivery of Theresa's fair share. A trustee, including a constructive trustee, may be held in contempt for willfully refusing to obey an order to pay over funds held in his hands to the one rightfully entitled thereto. *Ex parte Preston*, 347 S.W.2d at 940; *Ex parte Rogers*, 633 S.W.2d 666, 670 (Tex.App.—Amarillo 1982, no writ); *see also Ex parte Yates*, 387 S.W.2d 377, 380 (Tex.1965) (upholding order of contempt and commitment specifying finite period of incarceration). Given Charles' past resistance to compliance with the terms of the divorce decree and efforts to avoid giving Theresa her share of the community proper-

ty, and the fact that he only complied after briefly experiencing incarceration, we conclude the trial court's power to hold him in contempt and commit him to jail to compel compliance with its orders should not be disturbed.

Nevertheless, we hold the trial court *did not err in denying Theresa's motion to revoke the Order of Suspension*, despite doing so for the wrong reason. The record shows that Charles made payments in accordance with what he apparently believed were the agreed terms of performance, notwithstanding his earlier abrogation of the agreement. It appears that when Charles ceased performing, it was due to his sincere, albeit mistaken, belief that he had fully delivered Theresa's decreed share of the community property. The record does not support a finding that Charles willfully disregarded an order of the court. An honest mistake, as opposed to willful disobedience, is not an appropriate basis for revoking an Order of Suspension. Accordingly, we overrule appellant's fourth point of error.

We affirm the judgment of the trial court denying Theresa's motion for discovery and to revoke the Order of Suspension. We reverse the remainder of the judgment and remand the case to the trial court for further proceedings consistent with this opinion.

---

10. The concept of appointing one spouse as trustee for a former spouse is not novel in Texas. *See,* *e.g., Ex Parte Preston*, 162 Tex. 379, 347 S.W.2d 938, 940 (1961).